Cohn Lifland Pearlman
 Herrmann & Knopf, LLP
Park 80 Plaza West One
Saddle Brook, New Jersey 07663
Charles R. Cohen, Esq. (CC0573)
Telephone: (201) 845-9600
Attorneys for Defendant/Counterclaimant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLORADO-ARKANSAS-TEXAS DISTRIBUTING, L.L.C., | **Civil Action** |
| Plaintiff, | **Docket No. 1:06-cv-01937-UA (RCC)** |
| vs. | |
| AMERICAN EAGLE FOOD PRODUCTS, INC., | |
| Defendant/Counterclaimant. | |

## REPLY BRIEF IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION

On the Brief:
Charles R. Cohen, Esq.

# TABLE OF CONTENTS

**Page No.**

**TABLE OF AUTHORITIES** ................................................. i

**LEGAL ARGUMENT** ...................................................... 1

**POINT I**
NO VALID "FACT ISSUE" EXISTS BEFORE THIS COURT AS TO WHETHER
THERE WAS AN ENFORCEABLE ARBITRATION AGREEMENT .............. 1

**POINT II**
AMERICAN EAGLE WAS NOT REQUIRED TO MOVE TO COMPEL
ARBITRATION UNDER § 4 OF THE FAA, AND CAT'S DECISION NOT TO
APPEAR AT ARBITRATION WAS AT ITS OWN PERIL ...................... 4

**POINT III**
CAT'S CROSS-MOTION FOR SUMMARY JUDGMENT IS WITHOUT MERIT
AND MUST BE DENIED ............................................... 5

**POINT IV**
CAT'S OPPOSITION DOES NOT COMPLY WITH F.R.CIV. P. 56 AND
LOCAL CIVIL RULE 56.1 ............................................. 6

**CONCLUSION** ........................................................... 8

# TABLE OF AUTHORITIES

*Alliance Bernstein Investment Research and Management, Inc.. v. Schaffran*
445 F.3d 121 (2d Cir. 2006) ................................................ 2

*Buckeye Check Cashing, Inc. v. Cardegna,*
546 U.S. 440 (2006) ...................................................... 3

*Contec Corp. v. Remote Solution Co., Ltd.,*
398 F.3d 205 (2d Cir. 2005) .............................................. 1, 2

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,*
815 F.2d 840 (2d Cir. 1987) .............................................. 3, 6

*Kustom Kraft Homes v. Leivenstein,*
14 Cal. App.3d 805 (2d Dist.1971) ......................................... 4

**Page No.**

*Imptex International Corp. v. Lorprint, Inc.,*
625 F.Supp. 1572 (S.D.N.Y. 1986) .................................................. 3

*McAllister Bros., Inc. v. A & S Transportation Co.,*
621 F.2d 519 (2d Cir. 1980) ............................................................ 3

*Petition of Pahlberg,*
43 F.Supp.761 (S.D.N.Y. 1942) ....................................................... 4

*Rubin v. Sona International Corp.,*
457 F.Supp.2d 191 (S.D.N.Y. 2006) ................................................ 3

*Shaw Group Inc. v. Triplefine Intl. Corp.,*
322 F.3d 115 (2d Cir. 2003) ............................................................. 1

*W. D. S. U. v. Paramount Surgical Supply Co.,*
117 N.J. Super. 125 (App. Div. 1971) ............................................. 4

**Statutes**

9 U.S.C. §3 .................................................................................. 3
9 U.S.C. §4 .................................................................................. 4
9 U.S.C. §12 ................................................................................ 8
N.Y.C.P.L.R. 7503 ....................................................................... 8

**Rules**

Fed.R.Civ.P. 56(d) ....................................................................... 7
Fed.R.Civ.P. 56(e) ....................................................................... 7
S.D.N.Y. Local Rule 56.1 ......................................................... 6, 7
AFI Arbitration Rules ................................................................. 2

**Other Authorities**

CJS Arbitration §62 ................................................................. 4, 5

## LEGAL ARGUMENT

### POINT I
### NO VALID "FACT ISSUE" EXISTS BEFORE THIS COURT AS TO WHETHER THERE WAS AN ENFORCEABLE ARBITRATION AGREEMENT

Under Point I of its Opposition Brief, CAT declares that "the only issue before this court" is "whether or not there is a question of fact as to the existence of an agreement to arbitrate." CAT is wrong -- determination of this issue was reserved to the arbitrators themselves.

Generally, Courts should resolve the issue of arbitrability; however, this principal is superseded when there is an arbitration provision within an agreement that emits a "'clear and unmistakable' agreement to arbitrate arbitrability." *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003). Moreover, Courts have held that arbitration is the proper forum for determining jurisdiction where the parties have incorporated rules that specifically delegate arbitrable issues to an arbitrator. *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also, Shaw Group*, 322 F.3d at 122.

In *Contec*, plaintiff sought to enforce an arbitration clause against the defendant. The arbitration clause provided that any disputes would be resolved in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Rule 7 of the Commercial Arbitration Rules states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections to the scope or validity of the arbitration agreement." *Contec, supra*, 398 F.3d at 208. The *Contec* Court held that where the parties had explicitly incorporated rules which empowered the arbitrator to decide issues of arbitrability, the parties' intent to delegate jurisdictional issues to an arbitrator was "clear and unmistakable". *Contec, supra*, 398 F.3d at 208.

1

The same result was reached in *Alliance Bernstein Investment Research and Management, Inc. v. Schaffran*, even though the arbitration provision was limited in nature and did not expressly state that issues of jurisdiction were within the arbitrator's ambit. 445 F.3d 121, 126-127 (2d Cir. 2006). Nevertheless, the Court held that a corresponding rule allowing the arbitrators to "interpret and determine the applicability of all provisions under this code" was sufficient to allow the arbitrators to determine the scope of their jurisdiction. *Id.* at 126-27.

In the present case, the parties are members of the AFI and all the Sales Orders between them, over the course of years, provided for arbitration of their claims under the AFI Arbitration Rules (the "AFI Rules"). Specifically, the arbitration provision contained in every one of the Sales Orders stated as follows:

> ANY CONTROVERSY OR CLAIM ARISING OUT OF THIS CONTRACT SHALL BE SETTLED IN BINDING ARBITRATION BY THE ASSOCIATION OF FOOD INDUSTRIES INC. OF NEW YORK IN ACCORDANCE WITH ITS RULES OBTAINING.

*See Sobeck Certification*, dated January 14, 2007, Paras. 11, 18, 26, & 49.

The Introduction to the AFI Rules expressly states:

> Under the By-Laws of the Association, the arbitration procedure and practice is under the supervision of the Arbitration Board which assigns Arbitrators for hearings, interprets these Arbitration Rules, **determines questions of jurisdiction**, and in general decides all issues in connection with an Arbitration which are raised prior to the actual hearing itself.

*See Sobeck Certification*, dated January 14, 2007, Exhibit "B" (emphasis added).

This provision of the AFI Rules is almost exactly like the provision in *Contec*. The Sales Orders specifically incorporated the AFI Rules that empowered the arbitrator to decide the issues of arbitrability and jurisdiction. Therefore, as a matter of law, CAT and American Eagle intended to arbitrate in accordance with AFI Rules which allocated questions of jurisdiction to the arbitrator.

CAT nonetheless maintains, erroneously, that because it did not sign the 2005 Sales Orders, it is not bound by the arbitration agreement contained therein. The fact that the Sales Orders were not signed by CAT is irrelevant. CAT's assertion really inures to a question of contract formation and validity. Whether the contract is valid is an issue properly considered by an arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) (holding that arbitrator should determine whether or not arbitration provision was void for illegality[1]).

However, if the Court feels compelled to address the issue of whether or not a contract was formed such that the arbitration provision was valid, then governing law clearly mandates that there was a valid contract and, as such, CAT is bound by the arbitration provision. New York law plainly recognizes that a binding contract was formed. *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2d Cir. 1987) ("it is well established that a party may be bound by an agreement to arbitrate even absent a signature."). 815 F.2d at 846 (citing *McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d 519, 524 (2d Cir.1980)). The Court further stated that "while the Act does require a writing, it does not require that the writing be signed by the parties" (citing 9 U.S.C. §3) (other cites omitted). The Court went on to hold that "the district court did not err in finding that in this long standing and on-going relationship, Genesco agreed to arbitrate disputes arising under the unsigned sales confirmation as well." *Id*.

In *Imptex Intern. Corp. v. Lorprint, Inc.*, 625 F.Supp. 1572 (S.D.N.Y. 1986), the Court held that the arbitration agreement was enforceable despite the fact that the buyer did not sign or return the seller's contract and that the buyer's signature on a contract, as a matter if law, was not

---

[1] *See Rubin v. Sona International Corp.*, 457 F. Supp. 2d 191, 195-96 (S.D.N.Y. 2006) (holding that one must assert "particularized facts" when seeking to challenge the validity of an arbitration clause; mere allegations are insufficient).

3

required. This holding was based on the fact that the arbitration clause was commonly used in trade between parties. Furthermore, the Court held that the arbitration clause was enforceable because the buyer failed to object to the arbitration clause upon receipt of the sales contract wherein the provision was contained.

In light of the foregoing, CAT's claim that it never agreed to the arbitration provision fails, as a matter of law.

## POINT II

### AMERICAN EAGLE WAS NOT REQUIRED TO MOVE TO COMPEL ARBITRATION UNDER § 4 OF THE FAA, AND CAT'S DECISION NOT TO APPEAR AT ARBITRATION WAS AT ITS OWN PERIL

On page 5 of its Brief, CAT cites § 4 of the FAA as support that American Eagle "was, in essence, attempting to by-pass the statutory procedure" by proceeding before the AFI on the adjourned arbitration date despite CAT's failure to appear, rather than moving before the District Court for an order to compel CAT to arbitrate. CAT's position is without basis; in reality, it was CAT that "decided not to play by the rules" at its own peril.

> The common law rule that an agreement to arbitrate could not be specifically enforced was overturned by various statutes. *Petition of Pahlberg,* 43 F. Supp. 761 (S.D. N.Y. 1942). Under the Federal Arbitration Act (FAA), a party aggrieved by a failure to arbitrate pursuant to a written agreement may petition, if the case is otherwise within the jurisdiction of a federal district court, for an order directing that the arbitration proceed in the manner provided in that agreement. 9 U.S.C.A. § 4 . . . .
>
> **A statute providing a procedure for compelling arbitration is remedial in nature, and its invocation is not an indispensable condition to a valid arbitration proceeding**. *Kustom Kraft Homes v. Leivenstein,* 14 Cal. App. 3d 805, 92 Cal. Rptr. 650 (2d Dist. 1971). **A party may simply make a demand for arbitration, without first going to the court to compel the other party to participate, and an opponent who ignores the notice of the arbitration proceeding assumes the risk of a later judicial determination that there was in fact a contract requiring arbitration.** *District 65, R. W. D. S. U. v. Paramount Surgical Supply Co.,* 117 N.J. Super. 125, 283 A.2d 766 (App. Div. 1971).

4

CJS ARBITRATION § 62, Statutory Right to Compel Arbitration (emphasis added).

Here, CAT was aware of the pending AFI arbitration for months prior to March 7, 2006. Indeed, it is undisputed that the arbitration was scheduled for that date based upon CAT's formal request that the original date be adjourned for the convenience of CAT's principal, Mr. Lyda. It is also undisputed that, on the eve of the rescheduled arbitration hearing, the New York Supreme Court denied CAT's last-minute application for a stay of the arbitration. Despite this, CAT chose not to appear on March 7, 2006, and the Arbitrators, having weighed the evidence, ruled in favor of American Eagle.

There can be no doubt that CAT knowingly and purposely assumed the risk that the Arbitrators' Award would favor American Eagle and this court would later find that the award is enforceable. The court is therefore urged to enter summary judgment in favor of American Eagle and enforce the March 7, 2006, Arbitration Award.

## POINT III
### CAT'S CROSS-MOTION FOR SUMMARY JUDGMENT IS WITHOUT MERIT AND MUST BE DENIED

Under Point V of its Memorandum in Opposition to Defendant/Counterclaimant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment, CAT asks that American Eagle's Counterclaim be dismissed and the March 7, 2006, Arbitration Award vacated, based upon CAT's *ipse dixit* (and somewhat confusing) claim that "there is no issue of fact that the parties never entered into an agreement to arbitration." There is no merit to CAT's cross-motion.

As set forth above and in American Eagle's initial Brief in support of its motion for summary judgment, the Sales Orders underlying the March 7, 2006, Arbitration Award contained a broadly worded arbitration provision, requiring binding arbitration under AFI's Arbitration

5

Rules. Under New York law, CAT's failure to sign and return the Sales Orders did not negate the fact that there was an enforceable agreement to arbitrate. *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2d Cir. 1987).

Although CAT now claims that the AFI lacked jurisdiction over this arbitration, the AFI's Rules expressly assign to the arbitrators the power to determine "questions of jurisdiction" and decide "all issues in connection with an Arbitration which are raised prior to the actual hearing itself." Sobeck Certification, Exhibit "B," AFI Arbitration Rules. Thus, the arbitrators had the authority to determine both that a lawful arbitration agreement was in effect and CAT was bound by the Arbitrators' decision. The March 7, 2006, Arbitration Award in fact recognized a lawful "Arbitration Agreement" between the parties, and "having duly heard the proofs and allegations" entered an award in favor of American Eagle.

## POINT IV
## CAT'S OPPOSITION DOES NOT COMPLY WITH F.R.CIV. P. 56 AND LOCAL CIVIL RULE 56.1.

CAT's "Statement of Material Facts in Dispute in Opposition to Motion of Defendant/Counterclaimant" (hereinafter referred to as CAT's "Opposition Statement of Facts") does not comply with SDNY Local Civil Rule 56.1. The court should therefore disregard CAT's Statement to the full extent it deems appropriate.

First, CAT's Opposition Statement of Facts fails to "include a correspondingly **numbered paragraph responding to each numbered paragraph in the statement of the moving party** . . . ." S.D.N.Y. Local Civ. R. 56.1(b); emphasis in original). Instead of responding to <u>each</u> numbered paragraph, CAT's Statement of Material Facts in Dispute purports to dispute aggregated groups of paragraphs. (See CAT's Statement of Material Facts in Dispute paragraphs 6-10, 11-14, 20-21, 23-25 and 53-54.)

Second, CAT's Opposition Statement of Facts fails to **"specifically"** controvert each numbered paragraph in the statement of the moving party "by **a corresponding numbered paragraph** . . . ." S.D.N.Y. Local Civ. R. 56.1(c); emphasis in original. Instead, CAT's Statement of Material Facts in Dispute asserts that it "disputes" various paragraphs, without specifically identifying what material facts are actually -- and in good faith -- being controverted.[2] (See CAT's Statement of Material Facts in Dispute paragraphs 3, 4, 5, 6-10, 11-6, 17, 18, 20-21, 22, 23-25, 26, 28, 30, 31, 33, 34, 36, 39, 41, 42, 43, 44, 45, 46, 46, 48, 49, 50, 51, 52, 53-54, 55, 56, 58 and 59.)

Third, CAT's Opposition Statement of Facts fails to support **"each statement controverting any statement of fact"** with "citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)."[3] S.D.N.Y. Local Civ. R. 56.1(d);

---

[2] Fed.R.Civ.P. 56(d): "If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked an a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain **what material facts are actually and in good faith controverted**." (Emphasis added.)

[3] Fed.R.Civ.P. 56(d) provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. **When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party**. (Emphasis added.)

7

emphasis in original. Instead, CAT's Statement of Material Facts in Dispute asserts that it "disputes" various paragraphs without citation to admissible evidence. (<u>See</u> CAT's Statement of Material Facts in Dispute paragraphs 31, 33, 34, 36, 41, 47, 49, 50, 51,52, 55, 56, 58 and 59.)

In sum, it is manifestly clear that CAT's Opposition Statement of Facts (and even more, the Affidavit of Mr. Lyda, upon which it is based) is nothing more than an attempt to cloud, rather than illuminate, the facts underlying the instant motion. The court should not countenance such tactics.

## **CONCLUSION**

Agreements involving interstate commerce and containing a broadly worded arbitration provision were entered by the parties. The arbitration provision incorporated the Rules of the AFI. Consequently, AFI's Rules state that all questions of jurisdiction are determined by the arbitrator; as such, CAT is unable to contest the arbitration provision as a matter of law.

In addition, as CAT failed to comply with the time limitations of C.P.L.R. §7503(c), CAT should not be able to contest the award of the arbitrators. Moreover, CAT failed to bring any application to modify or vacate the Award within the period allotted by §12 of the Act.

In consideration of the arguments above and the presently existing law, American Eagle respectfully requests that the Defendant's motion to confirm the Award should be granted and the Award confirmed as a matter of law.

Respectfully submitted,

COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Attorneys for American Eagle Food Products, Inc.

By: _____
Charles R. Cohen, Esq.
For the Firm

February 27, 2007

8