UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X  **Civil Action**
COLORADO-ARKANSAS-TEXAS DISTRIBUTING,   :  **Docket No. 1:06-cv-01937-UA**
L.L.C.,                                                                      **(RCC)**
                                                                          :
            Plaintiff,                                                **STATEMENT OF**
                                                                          :  **MATERIAL FACTS IN**
     - v. -                                                           **DISPUTE IN OPPOSITION**
                                                                          :  **TO MOTION OF**
AMERICAN EAGLE FOOD PRODUCTS, INC.,      **DEFENDANT/COUNTER-**
                                                                          :  **CLAIMANT**
            Defendant/Counterclaimant.
---------------------------------------------------------------------X

Brief Carmen & Kleiman, LLP, attorneys for plaintiff/counterclaim defendant Colorado-Arkansas-Texas Distributing, LLC ("CAT"), hereby submits, pursuant to Rule 56.1(b) of the Local Civil Rules of this court, its Statement of Material Facts in dispute in opposition to the motion of Defendant/Counter-Claimant American Eagle Food Products, Inc. ("American Eagle") for summary judgment, as follows:

"**Parties**"[1]

1.   CAT does not dispute Para. "1" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS".

2.   CAT does not dispute Para. "2" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS".

"**Background**"

3.   CAT disputes Para. "3" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as limiting the description of the Association of Food Industries, Inc. CAT submits the undisputed Statement should read:

---

[1]   In its Statement, CAT will track, without admission, the headings of American Eagle.

"3.     AFI is a trade association serving the food import trade, have as its objectives, among others, being committed to developing programs that facilitate the business of its member companies and encourage free and fair trade, and foster compliance with United States Laws. See Exhibit "A" of the Certification of Eugene Sobeck, at Request To Admit No. 12 and Response thereto, at P. "4". AFI provides arbitration services. See Exhibit "A" of the Certification of Eugene Sobeck, at Request To Admit No. 13 and Response thereto, at P. "4", and Exhibit "D" of the Sobeck Certification at P. "2"."

4.     CAT disputes Para. "4" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS". This alleged undisputed "fact" presents no genuine issue of material fact relevant to the motion of American Eagle herein. See Affidavit of Thomas M. Lyda, III, in opposition to Motion of American Eagle for summary judgment, and in support of CAT's cross-motion for summary judgment, at Footnote "5" and Para. "27" (hereinafter "Lyda Affid., at Para. ____").

5.     CAT disputes Para. "5" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS". This alleged undisputed "fact" presents no genuine issue of material fact relevant to the motion of American Eagle herein. Id.

6, 7, 8, 9 and 10.   CAT disputes Para(s) "6", "7", "8", "9" and "10" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows.

Eugene Sobeck, President of American Eagle, had met Thomas M. Lyda, III, CAT's sole and managing member in 2004. Prior to that time, American Eagle had made only minor sales on a very small scale to CAT. See Lyda Affid., at Para(s). 16" – "17" (citing at Exhibit "2" thereof, pertinent portions of the Transcript of the Deposition of Eugene Sobeck taken on September 5, 2006, at P. 21, lns. 22-25; P. 22, ln. 1, "Sobeck Dep. Trans., at P. ___, lns. ___).

As between CAT and American Eagle with respect to purchases by CAT of any major amount of goods, (or sales by CAT of its goods), it was the custom of CAT to review documents presented, and if Mr. Lyda would agree to such a purchase, to sign the appropriate documents (or authorize Mr. Roger Martens, Chief Financial Officer of CAT), to execute such documents on CAT's behalf.  Lyda Affid., at Para(s). "18" - 19", "28" - "31".

American Eagle also sought the signature of its customers, including CAT, on American Eagle's "contracts", which "contracts" include an agreement to arbitrate any disputes.  In fact, in an *earlier series of significant contracts of large quantity and cost,* between CAT and American Eagle in 2004, American Eagle requested that its "contracts" be signed by CAT and returned.  As was the custom and practice of CAT, it did so.  Id. at Para(s). "28" – "31"; Exhibits "5" and "6".

American Eagle's notation, in complete form in the "Sales Orders" as alleged by it, state in each instance:

> THIS CONTRACT IS ENTERED INTO SUBJECT TO THE TERMS, CONDITIONS AND AGREEMENTS PRINTED ON THE BACK HEREOF.
>
> ARBITRATION: ANY CONTROVERSY OR CLAIM ARISING OUT OF THIS CONTRACT SHALL BE SETTLED IN BINDING ARBITRATION BY THE ASSOCIATION OF FOOD INDUSTRIES, INC. OF NEW YORK IN ACCORDANCE WITH ITS RULES THEN OBTAINING.
>
> THANK YOU FOR YOUR BUSINESS.  IF THIS CONFIRMATION IS INCORRECT, PLEASE CONTACT US IMMEDIATELY.  IF IT IS CORRECT, SIGN AND RETURN ONE COPY IMMEDIATELY.

See Lyda Affid., at Para. "25".

Such Sales Orders also contain, in each instance, a signature line for American Eagle and for CAT, as its customer.  Lyda Affid., at Para. "30".

"**The Transactions – First Transaction**"

11, 12, 13, 14, 15, and 16.  CAT disputes Para(s). "11", "12", "13", "14", "15" and "16" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"11, "12", "13" and "14".  In respect to an alleged "first transaction" of early February, 2005, between the parties, Mr. Sobeck faxed to CAT, on February 10, 2005, a series of "Sales Orders" for "320" and "240" cashew nuts (totaling the sum of $663,600.00).  The fax cover sheet, signed by Mr. Sobeck, *specifically stated*:

> Dear Tim:
>
> Thank you for your business on 320 and 240 cashews.  Attached are our sales order confirmations.
>
> Please advise your purchase order numbers and return with signature immediately (all contracts will be null and void if not signed and returned).
>
> Thanks again.
> [/S/ Signature]
> E.J. (Gene) Sobeck
> President American Eagle"

See Lyda Affid., at Para(s). "20" - "22".

"15".   The "Sales Orders", as to which Mr. Sobeck requested, under his fax cover letter, Mr. Lyda's signature and return, and while containing an arbitration clause, also stated:

> IF [THIS SALES ORDER] IS CORRECT, SIGN AND RETURN ONE COPY IMMEDIATELY.

See Lyda Affid., at Para(s). "24" – "25".

American Eagle recognized that signature and return by CAT were a requirement for American Eagle's contracts.  By way of example, but without limitation, after an initial demand for signature by CAT on American Eagle's "sales contracts" of February 10, 2005, on three (3) subsequent occasions American Eagle demanded that Mr. Lyda execute the Sales Orders and return them to the offices of American Eagle.  See Lyda Affid., at Para(s). "60" – "62".

Despite demand of American Eagle and receipt by CAT, neither Mr. Lyda nor anyone else at CAT ever signed the Sales Orders.

4

American Eagle also admits that CAT never issued any purchase orders corresponding to these "Sales Orders". See Lyda Affid., at Para. 26.

"16". American Eagle's requirement of signature by CAT on American Eagle's own writings (and the requirement of return thereof), contradicts American Eagle's assertion that CAT agreed without required signature and return of any written "sales orders", to arbitrate disputes before AFI. See Lyda Affid., at Para(s). "27", "60" – "62".

On the basis of American Eagle's own documentation, it is immaterial whether "CAT never questioned or refuted these Sales Orders". See Lyda Affid., at Para(s). "66" – "69".

"**The Transactions – Second Transaction**"

17. CAT disputes Para "17", of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"17. After a sales call by Debbie Roy of Debbie Roy Brokerage Company to Mr. Lyda regarding purchase of cashew nuts, Ms. Roy approached Seth Katz of Sterling Corporation, a seller's broker, and asked him to approach American Eagle. Mr. Katz "came back" to Ms. Roy with a price for cashews from American Eagle.

Based upon Ms. Roy's inducement to try a "firm bid", Ms. Roy alleged that she telephoned Mr. Katz, and gave him a "firm bid" on behalf of CAT to present to American Eagle. Lyda Affid., at Para(s). "36" – "37", and at Footnote "9".

Mr. Katz called Ms. Roy back "that day" and told Mr. Roy "We [American Eagle] will take it". Id. at Para(s). "37 – "38" and at Footnote "9"."

18. CAT disputes Para "18", of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"18. Upon this alleged confirmation of a "firm bid", Debbie Roy Brokerage completed a document Ms. Roy called a "Sales Confirmation", and faxed it to CAT, and to Sterling

5

Corporation. This "Sales Confirmation" contained Debbie Roy Brokerage's standard "sales confirmation form", used in 2005, and that the company used no other form. It is self-evident, that Debbie Roy Brokerage's standard sales confirmation form contains no arbitration clause or agreement to arbitrate any disputes. Lyda Affid., at Para(s). "39" – "40"; see also Lyda Affid., at Para. "38", at portions of the transcript of Mr. Lyda's deposition cited at Footnote "9" of his Affidavit and at Exhibit "8" thereof (CAT contends that light of CAT's custom and practice as to its major orders, this "Sales Confirmation" was a mere proposal, but in any event, required Mr. Lyda's approval, i.e., his signature)."

19.     CAT disputes Para "19" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"19.     The alleged "Sales Orders" whereby American Eagle apparently "memorialized this second transaction", were NOT transmitted to CAT via fax on or about February 23, 2005. In fact, Eugene Sobeck admitted these Sales Orders" were not so transmitted, but as alleged by Mr. Sobeck, were prepared for American Eagle's own internal purposes. Thus, by Mr. Sobeck's own admission, these "Sales Orders" could not have been "written confirmation" by American Eagle to CAT of any oral agreement. Lyda Affid., at Para(s). "50" – "52"."

20 and 21.     CAT disputes Para(s). "20" and "21", of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS" in its Memorandum of Law, as follows.

"20 and 21". However, these "Sales Orders" dated February 23, 2005 were later sent to CAT by American Eagle, with the "Sales Orders" of the alleged "first transaction".

On or about March 2, 2005, American Eagle, through Ms. Maria Chrobak, its import clerk (who reported directly to Akram Choudhry, its Chairman of the Board) demanded in writing that CAT "sign the sale/s orders and fax them back". These Sales Orders, for which

6

CAT's signature had been demanded, contained the language that "If [the Sales Order] Is Correct, Please Sign and Return Immediately", with a signature line for CAT, as a customer, and an arbitration clause.

On at least two later occasions, Ms. Chrobak's written demand dated March 2, 2005 with the "Sales Orders" was faxed to CAT, requesting that CAT execute and return such Sales Orders. Lyda Affid., at Para(s). "60" – "62"."

While the alleged eight Sales Orders of February 23, 2005 may have borne a notation "Sterling Contract BK-13445", it is undisputed that CAT was never given, never received and/or was never sent Sterling Corporation's Contract BK-13445.

As Sterling Corporation was the seller's broker, i.e. American Eagle's broker, the custom and practice acknowledged by both Mr. Katz and Ms. Roy in their respective depositions was that CAT would **never** receive Sterling Corporation's Sales Contract BK-13445 or notice of its terms and conditions, which included an arbitration clause.  Lyda Affid., at Para(s). "41" – "45".

The mere fact that Sterling Corporation may have been referenced as a "salesperson" on an American Eagle Sales Order, or that such "Order" may even note a "Sterling Contract # BK-13445" thereon, does not mean that CAT received any such Sterling Contract BK-13445 document or had notice of its terms and conditions.  Lyda Affid., at Para. "65".

Mr. Sobeck, designated as both a fact and expert witness by American Eagle, admitted that if CAT had never received the Sterling Corporation Sales Contract BK-13445, it would not be bound by it.  Lyda Affid., at Para(s). "46" – "48".

"22".   As noted previously, American Eagle's requirement of signature by CAT on American Eagle's own writings (and the requirement of return thereof), contradicts American Eagle's assertion that CAT agreed without required signature and return of any written "sales orders", to arbitrate disputes before AFI.  See Lyda Affid., at Para(s)."24", "27", "60" – "62".

7

On the basis of Amerian Eagle's own documentation, it is immaterial whether "CAT never questioned or refuted these Sales Orders". See Lyda Affid., at Para(s). "66" – "69".

**CAT's Breach**

23, 24 and 25.  CAT disputes Para(s) "23", "24" and "25"of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"23", "24" and "25".  The delivery dates for the first two of fifteen Sales Orders were March and April, 2005, respectively.  See Lyda Affid., at Para(s). "20" – "21" and the second and third pages of Exhibit "3" of the Lyda Affid.  Even beyond those alleged "delivery dates", American Eagle was still demanding that its "Sales Orders", containing an arbitration clause and under which alleged "delivery instructions" were requested, be signed and returned.

Based upon the issue of whether there existed under an agreement to arbitrate, it is factually immaterial whether CAT breached alleged "contract delivery dates" or whether CAT did not "cure "alleged "breach".  Lyda Affid., at Para(s). "60" – "62", "66" – "67".

**The Arbitration**

26.  CAT disputes Para "26"of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"26"  Based on a fax of October 12, 2005 from Mr. Sobeck to CAT, American Eagle had not filed its Demand For Arbitration with AFI until on or after that date.  Lyda Affid., at Para(s). "56" – "57", and at Exhibit "13" ("We are now compelled to file the dispute thru AFI arbitration.  Attached is a copy of the demand which we sent registered mail today".)

27.  CAT does not dispute Para "27"of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", which describes the "Nature of Dispute" in the alleged Demand For Arbitration (except that "EAGEL" is misspelled in the original document).

28. CAT disputes Para "28"of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", to the extent that:

"28". The "contracts" recited (i.e., on which the alleged "contract price" was based), are the alleged fifteen "Sales Orders" of American Eagle, never signed or returned by CAT. See Lyda Affid. at Exhibit "13", third page.

29. CAT does not dispute Para. "29" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS".

30. CAT disputes Para "30"of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", to the extent that:

American Eagle's Demand was served (or re-served) on or about October 12, 2005. See Lyda Affid., at Para(s) "56" – "57", and Exhibit "13".

31. CAT disputes Para "31"of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", to the extent that:

"31." The allegation of American Eagle "at which point it was out of time", is an disputed issue. Where there is no agreement to arbitrate at first instance, the issue is to be determined by the Court.

32. CAT does not dispute Para. "32" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS".

33. CAT disputes Para. "33" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"33". Mr. Lyda sent an E-Mail on January 17, 2005 to AFI requesting "to extend the Hearing scheduled for 01-31-05", on the basis of "personal issues that prevent me from

9

concentrating on the issues at hand in the near term".[2]  Mr. Lyda indicated he needed at least two weeks postponement for travel arrangements.  While Mr. Lyda stated "I wish also the right to challenge the arbitrators assigned to the panel", this was merely an attempt by a lay business person to try and reserve rights.  CAT did **not** participate in selection of the arbitrators.

  34. CAT dispute Para. "34" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

  "34". The matter of "CAT v. AHCOM, LTD" involved two Sales Contracts of Ahcom, Ltd. containing an AFI arbitration clause, both propounded and executed by the party (Ahcom, Ltd.) seeking to avoid arbitration.  Lyda Affid, at Para(s). "73" – "74".

  35. CAT does not dispute Para. "35" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS".

  36. CAT disputes Para. "36" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

  "36." To the extent that the issue alleged by American Eagle - "(long after the twenty-day time limitation set forth in New York C.P.L.R. §7503(c) had expired)", is an issue in dispute to be determined by the Court, where there is no agreement to arbitrate at first instance.

  37. CAT does not dispute Para. "37" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS".

  38. CAT does not dispute Para. "38" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS".

  39. CAT disputes Para. "39" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

---

[2] This was as a result of serious health issues concerning Mr. Lyda's mother.

"39."   Prior to the hearing, through its Counsel, CAT notified AFI and American Eagle that CAT was not going to appear and stated in writing:

"It is the position of Colorado Arkansas Texas Distributing LLC ("CAT") that there exists no jurisdiction to conduct the arbitration proceeding … as there was no agreement to arbitrate at first instance between American Eagle and CAT."

See Lyda Affid., at Para. "83"; see Affidavit of Richard E. Carmen, Esq., also submitted in opposition to the motion of American Eagle and support of CAT's cross-motion, at Para. "7" (hereinafter "Carmen Affid.").

40.   CAT does not dispute Para. "40" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS".

**CAT's Prior Arbitrations**

CAT disputes this entire Section of the "Material Undisputed Facts" presented by American Eagle in that (a) the "facts" alleged by American Eagle are not material or relevant to the issues before this Court, or (b) the "facts" alleged by American Eagle on this issue (if deemed material or relevant) are completely disputed.

41.   CAT disputes Para. "41" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS".

"41".   This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.  Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), there is no material factual inference shown by American Eagle, based upon the date of membership of CAT in AFI (April 15, 2004), and the date of filing of the Ahcom arbitration (July 1, 2004).

42.   CAT disputes Para. "42" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

11

"42".  This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.  Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), the arbitration before AFI, Index No. 2434, arose from two <u>Ahcom Sales Contracts</u> dated November 12, 2003, the respective Ahcom contracts numbered "015156.00" and "0015158.00", for cashew nut kernels, "320's" and "240's", four containers of each.  See Lyda Affid., at Exhibit "16" and Exhibit "17"; Exhibit "Q" at the Sobeck Certification."

43. CAT disputes Para. "43" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"43".  This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.  Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), the Ahcom Contracts were propounded by Ahcom Ltd., and contained an arbitration provision.  Such Ahcom Contracts were executed on behalf of Ahcom, Ltd. by its authorized person, Harry Sinclair."  Lyda Affid., at Para(s). "73" – "74", and Exhibit "16" and Exhibit "17".

44. CAT disputes Para. "44" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows

"44".  This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.  Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), the Ahcom Contracts specifically stated in pertinent part:  "Please sign and return the enclosed copy to acknowledge your acceptance of this sales contract.  **Failure to do so within seven days shall constitute acceptance of the terms and conditions contained herein**.".  Lyda Affid., at Para(s). "73" – "74", "80", and Exhibits "16" and "17" (Bolding Added).

12

45.     CAT disputes Para. "45" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"45"    This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action:  See Lyda Affid., at Para(s). "73" – "74", "80", and Exhibits "16" and "17".

Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), the issue of whether "seven days elapsed without CAT signing or returning the contracts" is irrelevant on the face of the Ahcom Contracts themselves (see CAT's Disputed Item No. "44" above).  In addition, the arguments of Ahcom regarding contract formation and payment terms did not vitiate the arbitration clause(s)".  See P. 5 of CAT's Memorandum, at Exhibit "P" of the Sobeck Certification.

46.     CAT disputes Para. "46" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"46".   This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action:  See Lyda Affid., at Para(s). "74", "80", and Exhibits "16" and "17"; CAT's No. "44" above.

Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), the issue of whether "CAT waited over seven months to sign and return the contracts" becomes irrelevant on the basis of review of the face of the Ahcom Contracts themselves (see CAT's Disputed Item No. "44" above), and in addition (and again), the arguments of Ahcom regarding contract formation and payment terms did not vitiate the arbitration clause(s)".  P. 5 of CAT's Memorandum, at Exhibit "P" of the Sobeck Certification.

In further regard, that Ahcom believed its Contracts were valid is shown by Ahcom's acceptance of CAT's check for payment of Ahcom's sales invoice S10400237 (noted at

Paragraph "1/" under "Additional Clauses" in both Ahcom Sales Contracts). Lyda Affid., at Para. "74" and Footnote "21".[3]

47. CAT disputes Para. "47" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"47." This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.

48. CAT disputes Para. "48" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"48." This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action. (See CAT's Disputed Item No. 44, above.) Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), CAT demanded, at least as early as March 1, 2004, that Ahcom honor its contracts. See Lyda Affid., at Footnote "21" and at Exhibit "20".

49. CAT disputes Para. "49" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"49." This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action. Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), when there is an issue as to the existence of an agreement to arbitrate, a material inference, if any, based on this "fact" is to be determined by the Court.

50. CAT disputes Para. "50" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

---

[3] Ahcom, in fact, sought to "double dip" (to later obtain the same funds already paid by CAT's check, by telling CAT, after presenting CAT's check to Ahcom's bank, that Ahcom would "rip the cheque up" when they have confirmation of the wired funds. See Lyda Affid., at Footnote "21".

14

"50."   This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.  Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), when there is an issue as to the existence of an agreement to arbitrate, a material inference, if any, based on this "fact" is to be determined by the Court.

51.   CAT disputes Para. "51" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"51."   This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.  Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), when there is an issue as to the existence of an agreement to arbitrate, a material inference, if any, based on this "fact" is to be determined by the Court.

52.   CAT disputes Para. "52" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"52."   This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.  Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), when there is an issue as to the existence of an agreement to arbitrate, a material inference, if any, based on this "fact" is to be determined by the Court.

53 and 54.   CAT disputes Para(s). "53" and "54"of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"53" and "54"   This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.  Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), there was dispute

between CAT and Ahcom as to the challenge of Ahcom, i.e. "Ahcom did not challenge the making of the arbitration clause itself, but only the contract(s) generally", and Ahcom took the position that "no agreement was reached on the contract CAT seeks to arbitrate".  Lyda Affid., at Para. "81" and Exhibit "24" thereof.

     55.    CAT disputes Para. "55" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"55".  This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.  Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), the position of CAT with respect to an "agreement to arbitrate" differs materially with that of Ahcom with respect to its Sales Contracts.  Ahcom was the propounder of such sales contracts, and it executed them.  Ahcom sought to disavow or repudiate its own language and its signature.  ("Please sign and return the enclosed copy to acknowledge your acceptance of this sales contract.  **Failure to do so within seven days shall constitute acceptance of the terms and conditions contained herein**.")

In the instant action, American Eagle demanded that CAT sign and return the Sales Orders (in each and every instance), if not signed and returned, American Eagle indicated that "all contracts will be null and void".  The requirement by American Eagle for signature and return of its contracts, if not met, would render "all contracts null and void", is completely different from the result contemplated under Ahcom's contracts, if Ahcom's contracts were not signed and returned.

CAT, in the instant action, and unlike Ahcom in that case, was not the propounder of the contracts containing an agreement to arbitrate.  In this case, also unlike in the Ahcom case, in

16

order for CAT to be bound as an obligor to an agreement to arbitrate, it was required to execute and return the writings of American Eagle. In the Ahcom case, CAT did not have to do so.[4]

56. CAT disputes Para. "56" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS". This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.

57. CAT disputes Para. "57" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"57" This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action. Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), in the instant case, this "fact" as presented herein by American Eagle remains disputed.

American Eagle misapprehends the issue in the Ahcom case. As stated therein by CAT at page "5" of its Memorandum: "In an effort to avoid arbitration, AHCOM contends that no contracts were ever formed between it and CAT, and therefore it cannot be bound by the arbitration clauses in the contracts. However, AHCOM's arguments regarding contract formation and payment terms do not vitiate the arbitration clauses. Rather AHCOM's assertions amount to claims about why their performance [(i.e. non-delivery of goods)] under the contract should be excused." Lyda Affid., at Para. "81" and Exhibit "24".

The nature of the dispute is not whether the arbitration clause is "enforceable" in and of itself, but whether there exists an agreement to arbitrate at first instance as an issue for this Court to determine. The narrow issue here is whether in this action (which differs completely from the

---

[4] To put it another way, if the prices of cashews had declined over the ensuing months, it would arguably have been more likely (than not) Ahcom would have made delivery and not disavowed or repudiated its own contracts.

17

facts in the Ahcom case) there was an agreement to arbitrate, which was not the subject for the arbitrators, as a matter of law.

58. CAT disputes Para. "58" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"58". This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action. Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), in the instant case, this "fact" as presented herein by American Eagle remains disputed.. The instant action is not the Ahcom case (where the drafter has executed the document, and evinces an intent to be bound), and the question is not whether the language of the arbitration clause is ambiguous or unambiguous. Rather, and again, the narrow issue here is whether there was an agreement to arbitrate, which is not. the subject for the arbitrators, as a matter of law.

59. CAT disputes Para. "59" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"59"   This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action. Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), in the instant case, this "fact" as presented herein by American Eagle remains disputed.

CAT correctly argued in Ahcom that the issue of contract formation was an issue for the Ahcom arbitrators, however the issue here is not one of contract formation. The issue here is whether an agreement to arbitrate, which is separate from the issue of contract formation, was concluded between CAT and American Eagle.

60. CAT disputes Para. "60" of American Eagle's "STATEMENT OF MATERIAL UNDISPUTED FACTS", as follows:

"60"    This alleged undisputed "fact" presents no genuine issue of material fact relevant to the instant action.  Moreover, even assuming for the sake of argument only, materiality or relevancy of such "fact" (which CAT does not concede), in the instant case, this "fact" as presented herein by American Eagle remains disputed.

In addition, pursuant to the terms of a Stipulation between Ahcom and CAT, the Court ordered the parties to proceed to arbitration.  Lyda Affid., at Para(s). "77" – "78", and Exhibit "22".  The Court never ruled on the issue of whether there was an agreement to arbitrate.  Lyda Affid., at Para. "78" and at Exhibits "22" and "23".

A hearing was held before AFI, but unlike the instant case, all parties agreed to participate in the arbitration, and an arbitral award (after appearance, i.e., participation by all parties and counsel at the hearing) was issued.

In the instant case, CAT did not participate, it did not file an answer, and it notified AFI and American Eagle that CAT would not appear or participate in the hearing.  CAT objected, prior to the hearing, of the lack of jurisdictional basis for the arbitration based upon the non-existence of an agreement to arbitrate.  CAT's conduct, in commencing its action in the New York State Court also supported its position, and was a valid assertion of its rights (as is its Reply to Counterclaim in the instant action, see Carmen Affid., at Para. "10" and at Exhibit "30").

                                                  **BRIEF CARMEN & KLEIMAN, LLP**
                                                  Attorneys for Plaintiff/Counterclaim Defendant

                                                  \s\ Ira Kleiman_____
                                                  By:    Ira Kleiman, Esq. (IK-6657)
                                                            805 Third Avenue, 11th Floor
                                                            New York, NY  10022
                                                            (212) 758-6160 or (212) 832-5570

Dated: February 13, 2007