UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------X
COLORADO-ARKANSAS-TEXAS DISTRIBUTING, L.L.C.,

          Plaintiff,

- v. -

AMERICAN EAGLE FOOD PRODUCTS, INC.,

          Defendant/Counterclaimant.
-----------------------------------------------------------------------------X

: Civil Action
: Docket No. 1:06-cv-01937-UA (RCC)
:
: **STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORD OF CROSS-MOTION OF PLAINTIFF**

Brief Carmen & Kleiman, LLP, attorneys for plaintiff/counterclaim defendant Colorado-Arkansas-Texas Distributing, LLC ("CAT"), hereby submits, pursuant to Rule 56.1(a) of the Local Civil Rules of this court, its Statement of Material Facts not in dispute in support of CAT's cross-motion for summary judgment, as follows:

**The Parties**

    **Colorado-Arkansas-Texas Distributing, LLC, Plaintiff**

1.    CAT is a limited liability corporation organized and existing under the laws of the State of Colorado. CAT's offices are located at 721 Nichols Boulevard, Colorado Springs, Colorado 80907. Affidavit of Thomas M. Lyda, III, in opposition to Motion of American Eagle Food Products Corp. ("American Eagle") for summary judgment, and in support of CAT's cross-motion for summary judgment, at Para "7" ("Lyda Affid., at Para. ____").

2.    Thomas M. ("Tim") Lyda, III is the sole and managing member of CAT. Lyda Affid., at Para. "8".

3. CAT is in the business of importing, distributing and selling "edible" nuts, i.e., cashews, pecans, macadamia nuts and the like. CAT has been in this type of business since in or about 1999. Mr. Lyda has been in the edible nut business for a period approaching two decades. Lyda Affid., at Para. "9".

**American Eagle Food Products, Inc.**

4. American Eagle is a corporation organized and existing under the laws of the State of New Jersey, with its offices located at 874 Pompton Avenue, Cedar Grove, New Jersey 07009. See portions of the transcript of the deposition of Eugene Sobeck, President of American Eagle, collectively attached at the Lyda Affidavit as Exhibit "2", taken in the above-entitled action on September 5, 2006, at Cover page, Pp. 2-3; P. 10, lns. 4-9 (hereinafter "Sobeck Dep. Trans., at P. ____, lns. ___").

5. American Eagle is in the business of importing and distributing edible dried fruits and nuts, and sells juice concentrates. Sobeck Dep. Trans., at p. 7, lns. 23-25; p. 8, lns. 1-6, at Lyda Affid., at Exhibit "2".

**Parties' Custom and Practice – American Eagle's Required Signature and Return**

6. Eugene Sobeck met Tim Lyda in 2004. Prior to that time, American Eagle had made only minor sales on a very small scale to CAT. See Lyda Affid., at Para(s). 16" –"17" (citing at Exhibit "2" thereof, Sobeck Dep. Trans., at P. 21, lns. 22-25; P. 22, ln. 1).

7. As between CAT and American Eagle with respect to purchases by CAT of any major amount of goods, (or sales by CAT of its goods), it was the custom of CAT to review documents presented, and if Mr. Lyda would agree to such a purchase, to sign the appropriate documents (or authorize Mr. Roger Martens, Chief Financial Officer of CAT), to execute such documents on CAT's behalf. Lyda Affid., at Para(s). "18" -19", "28"-"31".

8. American Eagle also sought the signature of its customers, including CAT, on American Eagle's "contracts", which "contracts" include an agreement to arbitrate any disputes.

9. In an *earlier series of significant contracts of large quantity and cost,* between CAT and American Eagle in 2004, American Eagle requested that its "contracts" be signed by CAT and returned. As was the custom and practice of CAT, it did so. Lyda Affid., at Para(s). "28" – "31"; Exhibits "5" and "6".

10. American Eagle's notation, in complete form in the "Sales Orders" state in each instance:

> THIS CONTRACT IS ENTERED INTO SUBJECT TO THE TERMS, CONDITIONS AND AGREEMENTS PRINTED ON THE BACK HEREOF.
>
> ARBITRATION: ANY CONTROVERSY OR CLAIM ARISING OUT OF THIS CONTRACT SHALL BE SETTLED IN BINDING ARBITRATION BY THE ASSOCIATION OF FOOD INDUSTRIES, INC. OF NEW YORK IN ACCORDANCE WITH ITS RULES THEN OBTAINING.
>
> THANK YOU FOR YOUR BUSINESS. IF THIS CONFIRMATION IS INCORRECT, PLEASE CONTACT US IMMEDIATELY. IF IT IS CORRECT, SIGN AND RETURN ONE COPY IMMEDIATELY.

See Lyda Affid., at Para(s). "25".

11. Such Sales Orders also contain, in each instance, a signature line for American Eagle and for CAT, as its customer. Lyda Affid., at Para. "30".

**February 10, 2005 Alleged Transaction**

12. In respect to an alleged "first transaction" of early February, 2005, between the parties, Mr. Sobeck faxed to CAT, on February 10, 2005, a series of seven "Sales Orders" for "320" and "240" cashew nuts (totaling the sum of $663,600.00). Lyda Affid., at Para(s). "20" – "22".

13. The fax cover sheet, signed by Mr. Sobeck, *specifically stated*:

Dear Tim:

Thank you for your business on 320 and 240 cashews. Attached are our sales order confirmations.

Please advise your purchase order numbers and return with signature immediately (all contracts will be null and void if not signed and returned).

Thanks again.
[/S/ Signature]
E.J. (Gene) Sobeck
President American Eagle"

See Lyda Affid., at Para(s). "20" - "22".

14. The "Sales Orders, as to which Mr. Sobeck requested under his fax cover letter, Mr. Lyda's signature and return, and while containing an arbitration clause, also stated:

IF [THIS SALES ORDER] IS CORRECT, SIGN AND RETURN ONE COPY IMMEDIATELY.

See Lyda Affid., at Para(s). "24" – "25".

15. As noted above, American Eagle recognized that signature and return by CAT were a requirement for American Eagle's contracts. By way of example, but without limitation, after an initial demand for signature by CAT on American Eagle's "sales contracts" of February 10, 2005, on three (3) subsequent occasions American Eagle demanded that Tim Lyda execute the Sales Orders and return them to the offices of American Eagle. See Lyda Affid., at Para(s). "60" – "62".

16. Despite demand of American Eagle and receipt by CAT, neither Mr. Lyda nor anyone else at CAT ever signed the Sales Orders. See Lyda Affid., at Para. 26.

17. American Eagle also admits that CAT never issued any purchase orders corresponding to these "Sales Orders". See Lyda Affid., at Para. 26.

4

18. On the basis of Amerian Eagle's own documentation, it is immaterial whether "CAT never questioned or refuted these Sales Orders". See Lyda Affid., at Para(s). "66" – "69".

**February 22, 2005 Alleged Transaction**

**Debbie Roy Brokerage Sales Confirmation** – **No Agreement to Arbitrate**

19. The Arbitration Award at issue herein (see Lyda Affid., at Exhibit "1") states in pertinent part:

"In regard to
 Claim by the Seller, American Eagle Food Products, Inc., that the Buyer, Colorado Arkansas Texas Distributing, refused to accept delivery of merchandise due under Sterling Corporation's sales agreement no. BK-13445 (Debbie Roy Brokerage Company's confirmation no. 20520). … .

\*     \*     \*

 The undersigned [arbitrators], …. in accordance with the Arbitration Agreement dated the Twenty-second day of February, 2005… ."

20. Debbie Roy Brokerage Company is a commodity brokerage company, located in Marksville, Louisiana, offering a line of nuts and some dried fruits. Debbie Roy is the principal of that corporation. Lyda Affid., at Para. "36", and at Exhibit "7" (at Pp. 1-4; P. 5, lns. 1-4; P. 8, lns. 12-23; P. 9, lns. 2-10, 15, 20-22; P. 10, lns. 1-2 of the transcript of the deposition of Debbie Roy taken on November 10, 2006, hereinafter "Roy Dep. Trans.").

21. On occasion, Debbie Roy has acted as a broker for CAT. Roy Dep. Trans., at P. 13, lns. 9-11, 16-19, at Lyda Affid., at Exhibit "7".

22. After a sales call by Debbie Roy of Debbie Roy Brokerage Company to Mr. Lyda regarding purchase of cashew nuts, Ms. Roy approached Mr. Seth Katz of Sterling Corporation, with whom Debbie Roy Brokerage had previously done business as a co-broker. Lyda Affid., at Para(s). 43-44.

23. Ms. Roy approached Mr. Katz as the seller's broker, and asked him to approach American Eagle. Mr. Katz "came back" to Ms. Roy with a price for cashews from American Eagle. Lyda Affid., at Para(s). "37" -"38", "44".

24. Ms. Roy alleges that she telephoned Mr. Katz, and gave him a "firm bid" on behalf of CAT to present to American Eagle. Lyda Affid., at Para. "36" –"37", and at Footnote "9".

25. Mr. Katz called Ms. Roy back "that day" and told Mr. Roy "We [American Eagle] will take it". Id. at Para(s). "37" – "38" and at Footnote "9"."

26. Upon this alleged confirmation of a "firm bid", Debbie Roy Brokerage completed a document Ms. Roy called a "Sales Confirmation", and faxed it to CAT, and to Sterling Corporation. Lyda Affid., at Para(s). "39" – "40.

27. In light of CAT's custom and practice as to its major orders, this "Sales Confirmation" was a mere proposal, and in any event, required Mr. Lyda's approval, i.e., his signature. Lyda Affid., at Footnote "9" and Exhibit "8" thereof.

28. This "Sales Confirmation" contained Debbie Roy Brokerage's standard "sales confirmation form" used in 2005, and Debbie Roy Brokerage Company used no other form. Lyda Affid., at Para. "39".

29. It is self-evident that Debbie Roy Brokerage's standard sales confirmation form contains no arbitration clause or agreement to arbitrate any disputes. Lyda Affid., at Para(s). "39" – "40".

**Eight American Eagle "Sales Orders" dated February 23, 2005**

30. The eight "Sales Orders" dated February 23, 2005, whereby American Eagle apparently "memorialized this second transaction", were NOT transmitted to CAT via fax on or

6

about February 23, 2005. Eugene Sobeck admitted these Sales Orders" were not so transmitted, but as alleged by Mr. Sobeck, were prepared for American Eagle's own internal purposes. See Lyda Affid., at Para(s). "49" – "52".

31. By Mr. Sobeck's own admission, these American Eagle "Sales Orders" could not have been "written confirmation" by American Eagle to CAT of any oral agreement. Id.

32. On or about March 2, 2005, American Eagle, through Ms. Maria Chrobak, its import clerk (who reported directly to Akram Choudhry, its Chairman of the Board) demanded in writing that CAT "sign the sale/s orders [(of February 10 and 23, 2005)] and fax them back". Lyda Affid., at Para. "60".

33. These Sales Orders, for which CAT's signature had been demanded, contained the language that "If [the Sales Order] Is Correct, Please Sign and Return Immediately", with a signature line for CAT, as a customer, and an arbitration clause. Lyda Affid., at Para. "60".

34. On at least two later occasions, Ms. Chrobak's written demand dated March 2, 2005 with the "Sales Orders" was faxed to CAT, requesting that CAT execute and return such Sales Orders. It is without dispute that said Sales Orders were not signed and returned. Lyda Affid., at Para(s). "60" – "62".

**Sterling Corporation BK-13445 Never Given, Received or Transmitted To CAT**

35. While the alleged eight Sales Orders of February 23, 2005 may have borne a notation" "Sterling Contract BK-13445", it is undisputed that CAT was never given, never received and/or was never sent Sterling Corporation's Contract BK-13445. Lyda Affid., at Para(s). "41" – "45".

36. As Sterling Corporation was the seller's broker, i.e. American Eagle's broker, the custom and practice acknowledged by both Mr. Katz and Ms. Roy in their respective depositions

7

was that CAT would **never** receive Sterling Corporation's Sales Contract BK-13445 or notice of its terms and conditions, which included an arbitration clause. Lyda Affid., at Para(s). "41" – "45".

37. The mere fact that Sterling Corporation may have been referenced as a "salesperson" on an American Eagle Sales Order, or that such "Order" may even note a "Sterling Contract # BK-13445" thereon, does not mean that CAT received any such Sterling Contract BK-13445 document or had notice of its terms and conditions. Lyda Affid., at Para. "65".

38. Mr. Sobeck, designated as both a fact and expert witness by American Eagle, admitted that if CAT had never received the Sterling Corporation Sales Contract BK-13445, it would not be bound by it. Lyda Affid., at Para(s). "46" – "48".

39. On the basis of American Eagle's own documentation, it is immaterial whether CAT never questioned or refuted the Sales Orders of American Eagle". See Lyda Affid., at Para(s). "66" – "69".

40. The allegation that an agreement to arbitrate is based on alleged "sales contracts" is vitiated by the demands on behalf of American Eagle that CAT execute and return the alleged "sales orders". Lyda Affid., at Para. 67.

**The Arbitration – CAT, With Valid Legal Basis, Did Not Participate Therein/Proper Assertion of Lack Of Agreement To Arbitrate**

41. Based on a fax of October 12, 2005 from Mr. Sobeck to CAT, American Eagle had not filed its Demand For Arbitration with AFI until on or after that date. Lyda Affid., at Para(s). "56" – "57", and at Exhibit "13" ("We are now compelled to file the dispute thru AFI arbitration. Attached is a copy of the demand which we sent registered mail today".)

42. American Eagle's Demand was served (or re-served) on or about October 12, 2005. See Lyda Affid., at Para(s). "56" – "58', and Exhibit "13".

43. Mr. Lyda sent an E-Mail on January 17, 2005 to AFI requesting "to extend the Hearing scheduled for 01-31-05", on the basis of "personal issues that prevent me from concentrating on the issues at hand in the near term".[1] Mr. Lyda indicated he needed at least two weeks postponement for travel arrangements. While Mr. Lyda stated "I wish also the right to challenge the arbitrators assigned to the panel", this was merely an attempt by a lay business person to try and reserve rights. CAT did **not** participate in selection of the arbitrators.

44. CAT filed a petition to stay arbitration on March 6, 2006, in the Supreme Court of the State of New York, County of New York, with respect to the AFI arbitration brought by American Eagle. The Court signed an order to show cause on that date. Lyda Affid., at Para. "83"; Carmen Affid., at Para. "2"and at Exhibit "25"

45. Through its Counsel, CAT notified AFI and American Eagle that CAT was not going to appear, stating in writing:

> "It is the position of Colorado Arkansas Texas Distributing LLC ("CAT") that there exists no jurisdiction to conduct the arbitration proceeding … as there was no agreement to arbitrate at first instance between American Eagle and CAT."

See Lyda Affid., at Para. "83"; see Affidavit of Richard E. Carmen, Esq., also submitted in opposition to the motion of American Eagle and support of CAT's cross-motion, at Para. "7" and Exhibit "27" (hereinafter "Carmen Affid.").

46. In the instant case, CAT did not participate in the arbitration, it did not appear therein or file any answer, and it notified AFI and American Eagle that CAT would not appear or participate in the hearing. CAT objected, prior to the hearing, of the lack of jurisdictional basis for the arbitration based upon the non-existence of an agreement to arbitrate. Lyda Affid., at Para. "83".

---

[1] This was as a result of serious health issues concerning Mr. Lyda's mother.

47. CAT's conduct, in commencing its action in the New York State Court also supported its position, and was a valid assertion of its rights (as is its Reply to Counterclaim in the instant action).  Carmen Affid., at Para. "10" and at Exhibit "30".

                                                      **BRIEF CARMEN & KLEIMAN, LLP**
                                                      Attorneys for Plaintiff/Counterclaim Defendant

                                                      \s\ Ira Kleiman_____
                                                    By:    Ira Kleiman, Esq. (IK-6657)
                                                              805 Third Avenue, 11th Floor
                                                              New York, NY  10022
                                                              (212) 758-6160 or (212) 832-5570

Dated: February 13, 2007