Cohn Lifland Pearlman
 Herrmann & Knopf, LLP
Park 80 Plaza West One
Saddle Brook, New Jersey 07663
Charles R. Cohen, Esq. (CC0573)
Telephone: (201) 845-9600
Attorneys for Defendant/Counterclaimant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLORADO-ARKANSAS-TEXAS DISTRIBUTING, L.L.C., | **Civil Action** |
| Plaintiff, | **Docket No. 1:06-cv-01937-UA (RCC)** |
| vs. | |
| AMERICAN EAGLE FOOD PRODUCTS, INC., | |
| Defendant/Counterclaimant. | |

## BRIEF IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
## MOTION FOR SUMMARY JUDGMENT

On the Brief:
Charles R. Cohen, Esq.

# TABLE OF CONTENTS

**Page No.**

**TABLE OF AUTHORITIES** ........................................................................ i-iv

**PRELIMINARY STATEMENT** ..................................................................... 1

LEGAL ARGUMENT ..................................................................................... 2

       POINT I
       THE COURT SHOULD CONFIRM THE ARBITRATION AWARD ........................... 2

          **(A)**    The Legal Standard For Summary Judgment ............................................. 2

          **(B)**    The Parties Entered a Binding Contract Involving Interstate Commerce .. 3

          **(C)**    N.Y. C.P.L.R. §7503 Requires Applications To Stay Arbitration To Be Brought Within 20 Days of Service of the Demand ................................. 9

          **(D)**    CAT's Objection To Arbitration Is Barred Under The Doctrine of Judicial Estoppel ............................................................................................. 12

          **(E)**    CAT's Objection To Arbitration Is Barred Under Section 12 of The Act ........................................................................................... 15

          **(F)**    When Presented With a Final Arbitration Award, the Court Shall Proceed Summarily To Confirm .......................................................................... 17

**CONCLUSION** ........................................................................................... 19

# TABLE OF AUTHORITIES

**Page No.**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................... 2, 3

*Bates v. Long Island Rail Road Co.*,
997 F.2d 1028 (2d Cir. 1993) ...................................................................... 14

*Bell v. Cendant Corp.*,
293 F.3d 563 (2d Cir. 2002) ........................................................................ 4

*Celetex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................... 3

*Commerce & Indus. Insu. Co. v. Nester,*
90 N.Y.2d 255, 660 N.Y.S.2d 366, 682 N.E.2d 967 (1997) ........................................ 10

*Conntech Development Co. v. Univ. of Connecticut Education Properties, Inc.,*
102 F.3d 677 (2d Cir. 1996) ........................................ 11

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd.,*
923 F.2d 245 (2d Cir. 1991) ........................................ 3

*Ferndale Corp. v. Schulman Urban Redevelopment Assoc.,*
758 F.Supp. 861 (S.D.N.Y. 1990) ........................................ 11

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995) ........................................ 4

*Florasynth, Inc. v. Pickholz,*
750 F.2d 171 (2d Cir. 1984) ........................................ 16

*Fortune, Alsweet & Eldridge, Inc. v. Daniel,*
724 F.2d 1355 (9th Cir. 1983) ........................................ 11

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,*
815 F.2d 840 (2d Cir. 1987) ........................................ 7

*Hartford Acc. & Indem. Co. v. Swiss Reinsurance America Corp.,*
246 F.3d 219 (2d Cir. 2001) ........................................ 4

*Hill v. Staten Island Zoological Society,*
147 F.3d 209 (2d Cir. 1998) ........................................ 17

*Imptex International Corp. v. Lorprint, Inc.,*
625 F.Supp. 1572 (S.D.N.Y. 1986) ........................................ 8, 11

*International Longshormen's Assoc., AFL-CIO v. Hanjin Container Lines, Ltd.,*
727 F.Supp. 818 (S.D.N.Y. 1989) ........................................ 11

*Kruse v. Sands Bros. & Co., Ltd.,*
226 F.Supp.2d 484 (S.D.N.Y. 2001) *reconsideration denied* 2002 WL 31356500 .................... 16

*Leadertex v. Morganton Dyeing & Finishing Corp.,*
67 F.3d 20 (2d Cir. 1995) ........................................ 9

*Matarasso v. Continental Cas. Co.,*
56 N.Y.2d 264, 451 N.Y.S.2d 703, 43 N.E.2d 1305 (1982) ........................................ 10

ii

*Matsushita Elec. Indus. Co. v. Zenith Radio Co.,*
475 U.S. 574 (1986) .................................................................................................. 3

*Matter of Beagle v. Motor Vehicle Accident Indem. Corp.,*
19 N.Y.2d 834, 280 N.Y.S.2d 399, 227 N.E.2d 314 (1967) ...................................... 10

*McAllister Bros., Inc. v. A & S Transportation Co.,*
621 F.2d 519 (2d Cir. 1980) ................................................................................... 7, 9

*M.J. Woods, Inc. v. Conopco, Inc.,*
271 F.Supp.2d 576 (S.D.N.Y. 2003) ....................................................................... 16

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
460 U.S.1 (1983) ................................................................................................... 3, 4

*National Cash Register Co. v. Wilson,*
8 N.Y.2d 377, 208 N.Y.S.2d 951, 171 N.E.2d 302 (1960) ........................................ 11

*National Union Fire Insu. Co. v. Belco Petroleum Corp.,*
88 F.3d 129 (2d Cir. 1996) ........................................................................................ 4

*Ottley v. Schwartzberg,*
819 F.2d 373 (2d Cir. 1987) ................................................................... 2, 3, 17, 18

*Pine Valley Productions v. S.L. Collections,*
828 F.Supp. 245 (S.D.N.Y.1993) ............................................................................ 17

*Prima Paint Corp. v. Flood & Conklin Manuf. Co.,*
388 U.S. 395 (1967) ............................................................................................... 14

*Republic of Nicaragua v. Standard Fruit Co.,*
937 F.2d 469 (9th Cir. 1991) .................................................................................. 14

*Rochester City School Dist. v. Rochester Teachers Assoc.,*
4 N.Y.2d 578, 394 N.Y.S.2d 179, 362 N.E.2d 977 (1977) ........................................ 11

*Schubtex, Inc. v. Allen Snyder, Inc.,*
49 N.Y.2d 1, 424 N.Y.S.2d 133, 399 N.E.2d 1154 (1979) .......................................... 9

*Simon v. Safelite Glass Corp.,*
128 F.3d 68 (2d Cir. 1997) ..................................................................................... 14

*The Home Insu. Co. v. RHA/Penn. Nursing Homes, Inc.,*
127 F.Supp.2d 482 (S.D.N.Y. 2001) ....................................................................... 17

iii

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems,*
103 F.3d 9 (2d Cir. 1997) ............................................................................................. 17

*Young v. U.S. Dept. Of Justice,*
882 F.2d 633 (2d Cir. 1989) *cert. denied* 462 U.S. 1131 (1989) ................................. 14

## United States Code Cited

9 U.S.C. §1 ....................................................................................................................... 1
9 U.S.C. §2 ....................................................................................................................... 3
9 U.S.C. §3 ....................................................................................................................... 7
9 U.S.C. §9 ........................................................................................................... 2, 16, 17
9 U.S.C. §10 ......................................................................................................... 2, 15, 18
9 U.S.C. §12 ............................................................................................... 15, 16, 18, 19
9 U.S.C. §13 ................................................................................................................... 18

## N.Y.C.P.L.R. Cited

C.P.L.R. §7503 ......................................................................................................... 9, 12
C.P.L.R. §7503(c) ................................................................................................. 6, 7, 9, 13

## Fed.R.Civ.P. Cited

Fed.R.Civ.P. 56(c) ............................................................................................................ 2

## PRELIMINARY STATEMENT

This is a motion for summary judgment to confirm a Final Arbitration Award (the "Award") pursuant to the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* (the "Act"), based on a series of agreements between the parties involving interstate commerce and containing identical, broadly worded arbitration clauses.  The parties are members of the Association of Food Industries, Inc. ("AFI"), a trade association serving the food import industry founded to foster compliance with U.S. laws and facilitate the business of its members and others in the industry by providing, *inter alia,* arbitration services.

Plaintiff, Colorado-Arkansas Texas Distributing, L.L.C. ("CAT") breached the contracts and Defendant, American Eagle Food Products, Inc. ("American Eagle") served a Notice to Arbitrate pursuant to AFI arbitration guidelines (the "Rules").  A Notice of the arbitration hearing, scheduled for January 31, 2006, was served on CAT, also pursuant to the Rules.  CAT acknowledged receipt of the Notice, did not object to the arbitration process, identified the attorneys who would represent it in the arbitration and requested an adjournment of the hearing.

At CAT's request, the hearing was re-scheduled for March 7, 2006.  One day before the March 7th hearing (and long after the time to do so under State law had expired), CAT asked the Supreme Court for the State of New York to enter an Order to Show Cause temporarily staying the arbitration, but the State Court refused.  Despite the fact that the March 7th AFI arbitration was not stayed by the State Court, CAT decided not to appear.  The hearing  nonetheless went forward as scheduled.  After consideration of the proofs, the three member AFI arbitration panel awarded American Eagle $128,500.00 pursuant to the AFI Rules. American Eagle then removed the matter filed by CAT to the Southern District for the District of New York and filed a Counterclaim to confirm the Award.

1

As is argued, *infra,* the burden placed on a party opposing an application to confirm an arbitration award is a high one. *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir. 1987). Absent one of the criteria enumerated in §10 of the Act, the Court must confirm the Award and enter judgment on same. *Id.* As shall be seen, there is no basis to modify or vacate the Award and the Court must confirm same as a matter of law.

## LEGAL ARGUMENT

### POINT I
### THE COURT SHOULD CONFIRM THE ARBITRATION AWARD

#### (A)    The Legal Standard for Summary Judgment.

Summary judgment is appropriate where the parties' submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). The Rule 56 standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise property supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in the original). "The mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." 477 U.S. at 252.

To defeat a motion for summary judgment the factual issue must be both *genuine* and *material.* 477 U.S. at 248. For a fact to be material, it must be outcome determinative. *Id.* A fact is genuine if it is one where a reasonable jury, based on the evidence presented, could hold in the non-movant's favor. *Id.*

Once the movant has demonstrated the lack of any genuine issue of material fact, the burden shifts to the non-movant to come forward with such specific facts as to prove the

2

existence of a genuine, material fact issue requiring resolution at trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Co.,* 475 U.S. 574, 587 (1986); *see also, Celetex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). Further, summary judgment must be entered "against a party who fails to make a [factual] showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celetex Corp.,* 477 U.S. at 322.

In short, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law". *Anderson,* 477 U.S. at 251-252. Where the application concerns an arbitration had to conclusion, the Court's task is to confirm the arbitrator's final award as mandated by §9 of the Act, absent a statutory basis for modification or vacatur. *Ottley v. Schwartzberg,* 819 F.2d at 376.

### (B)   The Parties Entered a Binding Contract Involving Interstate Commerce.

Federal policy strongly favors arbitration as an alternate means of dispute resolution. *David L. Threlkeld & Company, Inc. v. Metallgesellschaft Limited,* 923 F.2d 245, 248 (2d Cir. 1991) (citation omitted). The Act provides for the "rapid and unobstructed enforcement " of arbitration agreements, permitting the parties to an arbitrable dispute to move to arbitration as quickly and easily as possible. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* 460 U.S. 1, 22-23 (1983).

§2 of the Act provides that:

> a written ... contract evidencing a transaction involving commerce
> to settle by arbitration a controversy thereafter arising out of such
> contract or transaction, or the refusal to perform the whole or any
> part thereof ... shall be valid, irrevocable and enforceable, save
> upon such grounds as exist at law or in equity for the revocation of
> any contract.

"Whether a dispute is arbitrable comprises two questions: '(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular

3

dispute sought to be arbitrated falls within the scope of the agreement.'" *Hartford Accident And Indemnity Co. v. Swiss Reinsurance America Corp.,* 246 F.3d 218, 226 (2d Cir. 2001) (quoting *National Union Fire Insurance Co. v. Belco Petroleum Corp.,* 88 F.3d 129, 135 (2d Cir. 1996)).

The arbitration clause contained in the contracts in question was broadly worded, stating that, "ANY CONTROVERSY OR CLAIM ARISING OUT OF THIS CONTRACT SHALL BE SETTLED IN BINDING ARBITRATION BY THE ASSOCIATION OF FOOD INDUSTRIES, INC. OF NEW YORK IN ACCORDANCE WITH ITS RULES THEN OBTAINING".[1] (emphasis in the original). Such broadly phrased arbitration clauses are to be liberally construed in favor of arbitration, *Moses H. Cone Memorial Hospital,* 460 U.S. at 22, fn. 27 (citation omitted), leaving the issue of arbitrability itself to be determined by the arbitrator. *Bell v. Cendant Corp.,* 293 F.3d 563, 568 (2d Cir. 2002). The issue of whether the parties entered a valid agreement to arbitrate is to be determined pursuant to "ordinary state-law principles that govern contract formation" *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

The facts regarding the origins of the parties' agreement to arbitrate are clear and uncontroverted. The parties had maintained a business relationship for a number of years and had developed certain practices in the conduct of their business together. CAT had, in years past, placed oral orders for the purchase of edible nuts from American Eagle, either directly or through a firm bid placed with one of the several brokerage houses engaged in the industry. These orders were always confirmed by the issuance of a "Sales Order" by American Eagle,

---

[1] As set forth in the Rules §I, Para. 2:

> [T]he following minimum wording is required:
> ARBITRATION: Any controversy or claim arising out of this contract shall be settled in binding arbitration by the [AFI] in accordance with its rules then obtaining.

*See,* 1/15/07 Sobeck Certification, at Para. 11.

4

documents that contained the notations recited, *infra*.  Although these Sales Orders were not always signed, CAT always performed its obligations pursuant to same and paid for the nuts that it purchased from American Eagle.

On February 10, 2005, Sobeck entered an oral agreement with Lyda whereby CAT would purchase from American Eagle a large quantity of cashews.  Sobeck memorialized the agreement the same day by issuing seven Sales Order nos. 0022595 through 0022601 specifying the types, quantifies, prices and successive delivery dates for the cashews in question.  These Sales Orders were transmitted via fax under cover of a letter of transmittal addressed to Lyda thanking him for his business.  These Sales Orders all bore the notation, "confirm phone order from Tim Lyda to Gene Sobeck" and "IF THIS CONFIRMATION IS INCORRECT, PLEASE CONTACT US IMMEDIATELY".  (emphasis in the original).  The seven Sales Orders also bore the arbitration clause recited, *supra*.  Neither Lyda nor any one else at CAT ever took any action to question or otherwise refute the Sales Orders.

On February 22, 2005, Debbie Roy ("Roy") of Debbie Roy Brokerage Co., Inc., a brokerage house servicing the edible nuts industry, received a "firm bid" directly from Lyda to purchase additional cashews from American Eagle who had offered the nuts through Sterling Corporation, also a brokerage house servicing the industry.  This agreement was immediately confirmed by way of Sales Confirmation No. 20520 transmitted to CAT and issued by Roy.  This Sales Confirmation bore the notation "[p]lease notify this office immediately if the above terms and conditions are not in accordance with your understanding of this transaction, otherwise the trade will be considered final."

On February 23, 2005, American Eagle again memorialized this transaction by issuing eight Sales Order nos. 0022659 through 0022666 specifying the types, quantifies, prices and successive delivery dates for the cashews in question.  These eight Sales Orders were also

transmitted via fax and bore the notation "Sterling [Corp.] Contract BK-13445" as the salesperson.  As was the case in the previous Sales Orders, these eight Sales Orders also bore the notation "IF THIS CONFIRMATION IS INCORRECT, PLEASE CONTACT US IMMEDIATELY" (emphasis in the original) and contained the same arbitration clause recited, *supra.*  Neither Lyda nor any one else at CAT ever took any action to question or otherwise refute the Sales Orders.

As the delivery dates for the first two of the fifteen Sales Orders approached, the market price for cashews started to fall.  CAT ignored repeated requests for shipping instructions and refused American Eagle's every attempt to tender the respective shipments of goods.  With the delivery dates passing unheeded by CAT, CAT breached its agreement with American Eagle.  As recounted at length in the supporting Certification of Sobeck and the confirming documents annexed thereto, repeated attempts were made to secure action from CAT.  Despite conferences, phone conversations and Email memos exchanged between the parties, CAT failed to cure its breach.

On August 30, 2005, faced with the total lack of cooperation and responsiveness on the part of CAT and substantial losses due to illiquidity and mounting warehousing costs, American Eagle filed and served a Demand For Arbitration (the "Demand") under the aegis of AFI.  The Demand described the nature of the dispute as a "REFUSAL TO TAKE MERCHANDISE AS CONTRACTED THROUGH AMERICAN EAGLE FOOD PRODUCTS, INC. AND DEBBIE ROY BROKERAGE RESULTING IN ACCUMULATED WAREHOUSING AND CARRYING CHARGES AS WELL AS MARKET LOSS."  (Emphasis in the original).  The Demand also contained the notation, required by New York's C.P.L.R. §7503(c), "PLEASE TAKE FURTHER NOTICE, that unless within twenty days after service of this Notice of Intention to Arbitrate, you apply to stay the arbitration herein, you shall thereafter be precluded from

objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time." The Demand was served on CAT as required by the Rules, §1, Para. 2.[2]

American Eagle's damages, as itemized in connection with the Demand, equaled $112,350.00 occasioned by the difference between the contract price and the price then available for cashews in the market place, together with relocation and carrying costs of $15,750.00. The Demand sought a total of $128,900.00, including the $800.00 AFI filing fee recoverable under the Rules, §IX, Para. 5.

From the foregoing, it is readily apparent that the parties entered into a series of contracts, each of which was memorialized by the respective fifteen Sales Orders. Each of these Sales Orders includes a broadly worded arbitration provision. That the Sales Orders were not signed by CAT is of no moment. CAT plainly acted in a manner readily evincing its recognition of the agreements as binding and consistent with the past practices between the parties. In such instances, New York law plainly recognizes that a binding contract was formed. In *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840 (2d Cir. 1987), the Court stated that "it is well established that a party may be bound by an agreement to arbitrate even absent a signature." 815 F.2d at 846 (citing, e.g., *McAllister Brothers, Inc. v. A & S Transportation Co.,* 621 F.2d 519, 524 (2d Cir.1980)). The Court further stated that "while the Act does require a writing, it does not require that the writing be signed by the parties" (citing 9 U.S.C. §3) (other cites omitted). The Court went on to hold that "the district court did not err in finding that in this long standing and on-going relationship, Genesco agreed to arbitrate disputes arising under the unsigned sales

---

[2]As discussed in detail, *infra,* CAT failed to apply for a stay of the arbitration within the 20 day period specified in the Demand and as required by N.Y. C.P.L.R. §7503(c) and, in fact, delayed taking any such action for over six months, until it commenced the instant litigation the day before the AFI arbitration.

confirmation as well." *Id.* (citing *Imptex International Corp. v. Lorprint, Inc.,* 625 F.Supp. 1572 (S.D.N.Y. 1986)).

In *Imptex International Corp. v. Lorprint, Inc.,* the parties entered into a sales transaction through a broker and evidenced by a sales confirmation sent to both parties by the broker.  Both the sales confirmation and the seller's printed form contract contained an arbitration clause, calling for the settlement of all disputes to be arbitrated in New York.  As in the case at bar, neither party signed the sales confirmation and the buyer did not sign or return the seller's contract.  The Court held that where the buyer did not object to the arbitration clause in either the confirmation or the unsigned sales contract, a binding arbitration agreement had been formed. 625 F.Supp. at 1572.  In its holding, the Court stated that a buyer's signature on a sales contract was not required as a matter of New York law to bind the buyer to the arbitration provision and that, while agreements must be in writing to be enforceable under the Act, there is no requirement that they must be signed.  *Id.*  The Court concluded that where an arbitration clause is commonly used in trade between parties, a buyer's failure to object to the clause upon receipt of the sales contract in which it is contained binds the buyer to the arbitration clause.  *Id.*  The Court went on to grant the seller's motion to compel arbitration under the Act pursuant to the rules of an industry association providing arbitration services.  *Id.*

Both *Genesco* and *Imptex* have tremendous bearing on the case at bar.  The Court in *Genesco* found the course of past dealings between the parties to be determinative on the issue of contract formation where the parties had a prior history of transacting business under unsigned sales confirmations.  815 F.2d at 846.  In the instant case, CAT and American Eagle had several years of such dealings where transactions were consummated based upon the unsigned Sales Orders issued by American Eagle.  In *Imptex,* the Court found it similarly persuasive that the parties there had previously relied upon unsigned sales contract in their prior dealings.  625

F.Supp. at 1572.  There, as in the instant case, the sales contract contained an arbitration clause

requiring dispute resolution by submission to an industry trade organization.  There, as in the

case at bar, the buyer failed to object to the arbitration clause at any time prior to the

commencement of litigation.  *Id.*; *see also  Leadertex v. Morganton Dyeing & Finishing Corp.*,

67 F.3d 20, 25 (2d Cir. 1995) (New York law allows an arbitration agreement to rest on

"evidence of trade usage or *a prior course of dealings*"(quoting *Schubtex, Inc. v. Allen Snyder,*

*Inc.,* 49 N.Y.2d 1, 6, 424 N.Y.S.2d 133, 399 N.E.2d 1154 (1979) (emphasis added); *McAllister*

*Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d 519 (2d Cir.1980) ("the established law of

this circuit [is] that a party may be bound by an agreement to arbitrate even in the absence of a

signature") (citations omitted).

    Accordingly, American Eagle respectfully contends that the parties entered into a binding

series of contracts involving interstate commerce and containing an enforceable broadly worded

arbitration provision.  For all of these reasons and the arguments made, *infra,* that arbitration

provision, and the Award arising therefrom, should be confirmed as a matter of law.

    **(C)**    <u>**N.Y. C.P.L.R. §7503 Requires Applications To Stay Arbitration To Be**</u>
         <u>**Brought Within 20 Days of Service of the Demand.**</u>

    Under New York law, "unless the party served applies to stay the arbitration within

twenty days after such service he shall thereafter be precluded from objecting that a valid

agreement was not made or has not been complied with and from asserting in court the bar of a

limitation of time....  An application to stay arbitration must be made by the party served within

**twenty days** after service upon him of the notice or demand, or he shall be so precluded."  N.Y.

C.P.L.R. §7503(c) (emphasis added).

    In the case at bar, CAT failed to object to the Demand within the required twenty day

period.  In fact, CAT did not even attempt to stay the arbitration until the day before the

rescheduled arbitration hearing took place (after more than six months had elapsed).

In its application to the New York Supreme Court, CAT claimed that N.Y. C.P.L.R. §7503(c) was inapplicable as it had never signed American Eagle's Sales Orders.  In so doing, it placed **sole** reliance on the decision in *Matarasso v. Continental Casualty Co.,* 56 N.Y.2d 264, 451 N.Y.S.2d 703, 43 N.E.2d 1305 (1982) where the Court found that the insurance agreement which was the subject of the suit did not contain an arbitration clause and hence the prohibition contained in N.Y. C.P.L.R. §7503(c) was inapplicable.  Plaintiff's argument is flawed and its reliance on *Matarasso* misplaced.

The decision in *Matarasso* has been criticized as being "narrow" and "narrowly-tailored" to the limited facts presented therein.  *Commerce & Industry Insurance Co. v. Nester,* 90 N.Y.2d 255, 660 N.Y.S.2d 366, 369, 682 N.E.2d 967 (1997).  There the Court held that even where the agreement in question contains no arbitration clause, a party seeking to avoid the arbitration "can raise such objection [under N.Y. C.P.L.R. §7503(c)] only when it has not participated in the arbitration.  660 N.Y.S.2d at 370 (citing *Matter of Beagle v. Motor Vehicle Accident Indemnification Corp.,* 19 N.Y.2d 834, 280 N.Y.S.2d 399, 227 N.E.2d 314 (1967)).  It is clearly distinguishable on its face as it is uncontested that the fifteen contracts underlying the instant case contained a broadly worded arbitration clause.  Further, there can be no doubt that CAT participated in the arbitration process.  Not only did Lyda request an adjournment to accommodate his "travel arrangements" to facilitate his attendance , but he reserved his right to challenge the arbitrators chosen to serve on the panel.  He even went so far as to identify the attorneys who would be representing CAT in connection with the arbitration.  That he later chose not to attend the rescheduled hearing (instead choosing to file an untimely, unsuccessful application to stay the arbitration before the New York State court) should be of no moment.

10

CAT's conduct clearly constitutes participation in the arbitration process. *See, Rochester City School District v. Rochester Teachers Association,* 4 N.Y.2d 578, 394 N.Y.S.2d 179, 182, 362 N.E.2d 977 (1977) ("[a] party who has participated in arbitration cannot later seek to vacate the award on the grounds that the controversy is not subject to arbitration"); *National Cash Register Co. v. Wilson,* 8 N.Y.2d 377, 208 N.Y.S.2d 951, 955, 171 N.E.2d 302 (1960) (a party, by participating in arbitration without moving for a stay, waived its ability to raise the objection that it had not entered into an agreement with an arbitration clause); see *also, Conntech Development Co. v. University of Connecticut Education Properties, Inc.,* 102 F.3d 677 (2d Cir. 1996) (citing *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) (it is unjust to permit the appellant to challenge arbitration, after voluntarily participating in the process for several months, **shortly before the arbitrator's decision is rendered**); *Ferndale Corp. v. Schulman Urban Redevelopment Associates,* 758 F.Supp. 861, 867 (S.D.N.Y. 1990) (once a party receives notice of his adversary's intention to arbitrate, the proper procedure is to *promptly* make an application by special proceeding to stay the arbitration); *International Longshoremen's Association, AFL-CIO v. Hanjin Container Lines, Ltd.,* 727 F.Supp. 818, 821 (S.D.N.Y. 1989) (a party who fails to raise a timely objection as to an arbitrator's authority to arbitrate **waives** the objection); *Imptex International Corp. v. Lorprint, Inc.,* 625 F.Supp. at 1572 (a buyer who failed to object to the arbitration clause contained in an unsigned sales contract **waived** his objection to seller's election to arbitrate).

It is clear that, in the case at bar, CAT had every conceivable opportunity to object to the inclusion of the arbitration provision contained in the Sales Orders, yet never did so. The facts are uncontroverted that never once was CAT heard to complain about the arbitration clause. CAT made no objection to the arbitration clause when it received the fifteen Sales Orders.

CAT's silence continued as the dates for the delivery of the respective shipments of goods continued to pass. When CAT received the Arbitration Demand, it had twenty days under New York's C.P.L.R. §7503(c) to bring an application for a stay of proceedings. The twenty days elapsed with no action being taken by CAT. The arbitration was rescheduled to March 7, 2006 at CAT's request. CAT waited until March 6, 2006 to file its (unsuccessful) application to stay the arbitration. At that point, six months had passed from the time that CAT was served with the Arbitration Demand. CAT was therefore barred by the time limitations imposed by New York's C.P.L.R. §7503. (CAT was further barred by the common law doctrine of waiver.) Under the totality of these facts, American Eagle respectfully contends that the opportunity for CAT to object to the arbitration and to the agreements from which the arbitration arose was waived. The Court's role now is to summarily confirm the arbitral Award under the Act.

### (D) CAT's Objection To Arbitration Is Barred Under The Doctrine of Judicial Estoppel.

On January 17, 2006, Lyda sent an Email to AFI seeking to adjourn the original arbitration date. In it, he noted that CAT had received two prior, favorable decisions before AFI arbitrators and made specific reference to the award rendered in *CAT v. AHCOM, Ltd.* Yet in the Court proceeding to compel that arbitration, CAT successfully urged the exact position that it now seeks to oppose.

In *AHCOM, Ltd. v. CAT,* Case No. 04-CV-6757 (LTS), Plaintiff AHCOM, Ltd. ("AHCOM") brought an application for a preliminary injunction seeking to stay CAT's Demand for Arbitration before the AFI. In its Memorandum of Law filed in support of its application (the "AHCOM Memo"), AHCOM argued that no agreement to arbitrate was ever formed between the parties. AHCOM Memo, at p. 2. It sets forth facts that are virtually identical to those of the case at bar. There AHCOM had sent CAT two sales proposals, dated November 12,

12

2003, for cashew nut kernels at a set price. *Ibid.* Each contained an arbitration provision and further contained the requirement that they be signed and returned to AHCOM within seven days. The seven days elapsed without CAT signing or returning the contracts. *Ibid.* Over the following months, the price of cashew nut kernels increased substantially. AHCOM Memo, at p. 3. Seeking to capitalize on the out-dated and far lower prices contained in the November 12, 2003 contracts, CAT *six months later* "back-dated its signatures" to December 19, 2003 and returned them to AHCOM on June 24, 2004. *Ibid.* When AHCOM refused to tender the subject goods, CAT filed a Demand for Arbitration under the aegis of AFI on July 1, 2004.[3] AHCOM Memo, at p. 2. In response, AHCOM promptly filed suit before the Court and filed an application to stay the arbitration. As the basis for the sought after relief, AHCOM argued that CAT had failed to sign and return the sales proposals within their stated expiration periods and, with no contracts having been formed, there existed no arbitration clause between the parties.

In response to AHCOM's application, CAT filed a cross motion to compel arbitration and its own Memorandum of Law (the "CAT Memo") in support thereof and in opposition to AHCOM's request for a stay of the arbitration. In its Memo, CAT argued in favor of the same arbitration clause that is involved in the case at bar. CAT Memo, at p. 3. In response to AHCOM's argument that CAT had neither signed nor returned the agreement from which the arbitration clause was derived, CAT argued that under a broadly worded arbitration clause such as was contained in the AHCOM agreements (again, being identical to that contained in American Eagle's Sales Orders), it was the arbitrators and not the Court who should determine

---

[3]The Demand For Arbitration filed by CAT against AHCOM employed the same AFI form used by American Eagle in the case at bar and contained the identical language concerning the twenty-day period of limitation in which to object by way of application to stay as required by N.Y. C.P.L.R. §7503(c).

the issue.  CAT Memo, at p. 4.  It relied on the decision in *Prima Paint Corp. v. Flood &*

*Conklin Manuf. Co.,* 388 U.S. 395, 402 (1967), and argued that "*Prima Paint* has been

universally interpreted to require arbitration of **any** issue relating to the validity, or

enforceability, of an entire contract containing a broad arbitration clause", citing *Republic of*

*Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 476 (9th Cir. 1991).  CAT Memo, at p. 6

(emphasis in the original).  In short, CAT sought to enforce a contract and thus take advantage of

subsequent changes in the market price that were favorable to it.  The arbitration thus went

forward, leading to an arbitral award in CAT's favor, dated March 8, 2005.

 "The doctrine of judicial estoppel ... may prevent a party who benefits from the assertion

of a certain position, from subsequently adopting a contrary position....It is supposed to protect

judicial integrity by preventing litigants from playing "fast and loose" with courts, thereby

avoiding unfair results and 'unseemliness'".  *Young v. U.S. Dept. Of Justice,* 882 F.2d 633, 639

(2d Cir. 1989), *cert. denied* 462 U.S. 1131 (1989) (citations omitted); *see also, Simon v. Safelite*

*Glass Corp.,* 128 F.3d 68, 71 (2d Cir. 1997).  The doctrine protects the sanctity of the oath and

the integrity of the judicial process.  *Bates v. Long Island Rail Road Co.,* 997 F.2d 1028, 1037

(2d Cir. 1993).  "Preserving the sanctity of the oath prevents the perpetration of untruths which

damage public confidence in the integrity of the judicial system....Second, the doctrine seeks to

protect judicial integrity by avoiding the risk of inconsistent results in [different] proceedings."

997 F.2d at 1038 (citations omitted).  A party invoking judicial estoppel must show that "[f]irst,

the party against whom the doctrine is asserted must have argued an inconsistent position in a

prior proceeding; and, second, the prior inconsistent position must have been adopted by the

court in some manner." *Id.*

 There is no doubt that CAT has previously "argued an inconsistent position in a prior

proceeding". It is equally clear that CAT's prior inconsistent position was adopted by the Court in granting its application to compel arbitration. It is hard to imagine a set of circumstances that more completely fulfill the requirements for the application of the doctrine of judicial estoppel. It is also clear that CAT now seeks to play "fast and loose" with the courts. In *AHCOM*, CAT argued in favor of the (back-dated) contract as being binding to compel arbitration to take advantage of changes in the market price of cashews that vastly favored its interests. In the instant case, CAT has taken the precisely opposite position, here to avoid changes in the market price of cashews that are disadvantageous to its interest. In short, American Eagle respectfully submits that not only does this case completely satisfy the requirements for the application of the doctrine of judicial estoppel, but that the policy considerations underlying the doctrine cry out for its application. For the Court to decide otherwise would produce a grossly unfair result, one that would be quintessentially unseemly. For all of these reasons, American Eagle respectfully submits that CAT must be barred from opposing the arbitration proceeding giving rise to this action and from challenging the validity of the contracts from which the arbitrations provision are derived.

### (E)   CAT's Objection To Arbitration Is Barred Under Section 12 of The Act.

§10 of the Act permits the Court to vacate an arbitration award upon the application of "any party to the arbitration" where one of five criteria are shown to be present. These include:

(1)   Where the award was procured by corruption, fraud or undue means.

(2)   Where there was evident partiality or corruption in the arbitrators, or either of them.

(3)   Where the arbitrators were guilty of misconduct in refusing to postpone the hearing ...

(4)   Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. [and]

(5)   Where an award is vacated and the time within which the

> agreement required the award to be made has not expired the court,
> may, in its discretion, direct a rehearing by the arbitrators.

None of these criteria are present in the instant case to warrant a vacatur.

Of critical significance to this matter, however, is the limitation on such applications contained in §12 of the Act, which requires that any "[n]otice of motion to vacate, modify or correct an award must be served upon the adverse party or his attorney **within three months after the award is filed or delivered.**" (emphasis added). The Award was issued and served on March 7, 2006, the very day after CAT filed it's State Court proceedings. Pursuant to the plain language of §12 of the Act, however, the time for the filing of a motion to vacate the award tolled on June 7, 2006. Yet CAT has not filed any motion, whether to vacate, modify, correct or otherwise.

The law attendant to such situations is clear. Where the §12 period has tolled, the parties are wholly and irrevocably barred from raising a challenge to the award. "The Second Circuit has made it clear that there is no exception to [the] three month limitation period [of §12]" *Kruse v. Sands Brothers & Co., Ltd.,* 226 F.Supp.2d 484, 486 (S.D.N.Y. 2001), reconsideration denied, 2002 WL 31356500; *see also, Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 175 (2d Cir. 1984) (a party may not raise a motion to vacate, modify or correct an arbitration award after the three month period [under §12] has run, even when raised as a defense to a motion to confirm) (citations omitted); *M.J. Woods, Inc. v. Conopco, Inc.,* 271 F.Supp.2d 576, 582 (S.D.N.Y. 2003) (a party's failure to seek vacation of an arbitration award within the Act's three-month limitation period required confirmation of the award as to all claims resolved therein) (citing Act §§9, 12).

Here there is no question that CAT has failed to file the requisite motion within the time limitations imposed by the Act. In such cases, the law is clear; the Award must be confirmed as a matter of law.

**(F)     When Presented With a Final Arbitration Award, the Court Shall Proceed Summarily To Confirm.**

Pursuant to §9 of the Act, any party may apply within one year of the award's entry to the Court for the district within which the award was made.  The confirmation of an arbitration award is a summary proceeding that converts a final arbitration award into a judgment of the Court.  *Ottley v. Schwartzberg,* 819 F.2d at 377; *see also*: *The Home Insurance Co. v. RHA/Pennsylvania Nursing Homes, Inc.,* 127 F.Supp.2d 482, 487 (S.D.N.Y. 2001) (a petition to confirm an arbitration award is a summary proceeding in which the award is entitled to great deference by the reviewing court) (citing *Hill v. Staten Island Zoological Society,* 147 F.3d 209, 212 (2d Cir. 1998)); *Pine Valley Productions v. S.L. Collections,* 828 F.Supp. 245, 247 (S.D.N.Y. 1993) (a court is bound to confirm an award even if it would have come to a different conclusion, as long as rational grounds exist for the arbitrator's decision).  The showing required to avoid summary confirmation is high.  *Ottley v. Schwartzberg,* 819 F.2d at 376; *see also, Willemijn Houdstermaatschappij, BV v. Standard Microsystems,* 103 F.3d 9, 12 (2d Cir. 1997) (a party moving to vacate the award has the burden of proof) (citation omitted).

In connection with the instant motion, the Court has been presented with:

(a)     A binding series of contracts involving interstate commerce and containing a broadly worded arbitration provision;

(b)     A Demand for Arbitration, dated August 30, 2006, and worded and served in conformity with the Rules promulgated by the AFI;

(c)     A Notice of Hearing, dated December 16, 2005, containing the panel of arbitrators selected to consider the matter, the receipt of which was confirmed by CAT in the January 17, 2006 Email from Lyda;

(d)     CAT's adjournment request, contained in that January 17, 2006 Email;

17

(e)     AFI's notification to CAT of the grant of its adjournment request and noticing the new hearing, all contained in its Email of January 20, 2006;

(f)     The final arbitration Award, dated March 7, 2006, in favor of American Eagle and against CAT, in the amount of $128.500.00.

*See* §13 of the Act.

Again, CAT has failed to file any motion to modify or vacate the Award. *See,* §12 of the Act. Further, it has raised no basis for the Court to direct a rehearing by the arbitrators. *See,* §10 of the Act. Absent a statutory basis for modification or vacatur, it is the task of this Court, when presented with an arbitrator's determination and final award, to confirm that award as mandated by §9 of the Act. *Ottley*, 819 F.2d at 376.

As a final matter, the Rules under which the arbitration was had provides American Eagle with the right to recover its attorneys fees as occasioned by the instant action. §IX, Para. 10 of the Rules provides that where "[a]fter sixty days, the party in whose favor an award has been made is entitled to reasonable legal costs and other fees in obtaining enforcement of the award." §IX, Para. 13 of the Rules provides that "[i]f an award is challenged in court, the party in whose favor the award was made is entitled to reasonable legal fees pursuant to the successful defense of the award".

Based upon all of the foregoing, American Eagle most respectfully submits that this honorable Court must grants its motion and confirm the Award as a matter of law and that, in addition to the $128,500.00 granted it by the Award, the Court should include an award of the attorneys fees and other legal costs occasioned by American Eagle in having been forced by CAT to defend its Award and for seeking the confirmation and entry of judgment upon same.

18

## CONCLUSION

Contracts involving interstate commerce and containing a broadly worded arbitration provision were entered by the parties. CAT cannot now be permitted to contest this fact, having failed to comply with the time limitations of N.Y. C.P.L.R. §7503(c) and, further, based on the doctrines of waiver and judicial estoppel. As CAT failed to bring any application to modify or vacate the Award within the period allotted by §12 of the Act, and there being no basis to question the foundation upon which the Award rests, American Eagle respectfully submits that the Court's duty is plain; Defendant's motion to confirm the Award should be granted and the Award confirmed as a matter of law.

Respectfully submitted,

COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Attorneys for Defendant/Counterclaimant
American Eagle Food Products, Inc.

By: _____

Charles R. Cohen, Esq.
For the Firm

Dated: January 16, 2007

19