UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
COLORADO-ARKANSAS-TEXAS DISTRIBUTING, L.L.C.,

Plaintiff,

-against-

06 Civ. 1937 (LAK)

AMERICAN EAGLE FOOD PRODUCTS, INC.,

Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

Richard E. Carmen
Ira Kleiman
CARMEN & KLEIMAN, LLP
*Attorney for Plaintiff*

Charles R. Cohen
COHN LIFLAND PEARLMAN HERRMAN & KNOPF LLP
*Attorney for Defendant*

LEWIS A. KAPLAN, *District Judge.*

This case arises from an arbitration award in favor of defendant, American Eagle Food Products, Inc. ("AEF"), against plaintiff, Colorado-Arkansas-Texas Distributing, L.L.C., ("CAT"). AEF initiated arbitration to resolve its claim that CAT breached various contracts by refusing to accept delivery of merchandise.[1] CAT sued in New York state court to enjoin the

1 Lyda Decl. Ex 1.

arbitration, but the arbitration proceeded.[2] AEF removed the case to this Court and filed a counterclaim to confirm the arbitration award.[3] Before the Court are cross-motions for summary judgment.[4] AEF seeks summary judgment confirming the arbitration award. CAT argues that the arbitration award is unenforceable because CAT never agreed to arbitrate and moves for summary judgment denying AEF's claim.

All parties agreed that the Court would decide such questions of fact as might be necessary to fully resolve the matter on the basis of the existing record.[5] These are the Court's findings of facts and conclusions of law based on that record.

*Facts*

CAT, a Colorado limited liability company, distributes and sells edible nuts. AEF, a New Jersey corporation, sells edible nuts. Mr. Lyda is the managing member of CAT, and Mr. Sobeck is the president of AEF.[6]

---

2 The Supreme Court of the State of New York issued a order to show cause why the arbitration should not be enjoined, but it did not issue a temporary restraining order to prevent the arbitration. *See* AEF's Statement of Undisputed Material Facts ("AEF Facts") ¶¶ 36-38; Carmen Decl. Ex. 25.

3 AEF's Answer & Counterclaim [DI 6]; Amended Notice of Removal [DI 44].

4 AEF's Motion for Summary Judgment [DI 18]; CAT's Motion for Summary Judgment [DI 24].

5 Stipulation and Order [DI 45].

6 AEF Facts ¶¶ 1-2; CAT's Statement of Undisputed Material Facts ("CAT Facts") ¶ 1-5.

CAT and AEF have had a business relationship since some time prior to 2004.[7] CAT ordered nuts from AEF on numerous occasions, either directly or through a broker.[8] AEF followed up each order by issuing a "sales order" form.[9] The forms contained the following language:

> "This contract is entered into subject to the terms, conditions, and agreements printed on the back hereof.
>
> "Arbitration: Any controversy or claim arising out of this contract shall be settled in binding arbitration by the Association of Food Industries, Inc., of New York in accordance with its rules then obtaining.
>
> "Thank you for your business. If this confirmation is incorrect, please contact us immediately. If it is correct, sign and return one copy immediately."[10]

It is common in the nut industry and in the CAT-AEF relationship to make an oral order that is confirmed by a sales order or other document.[11] CAT frequently, but not always, signed and returned the sales order forms, but the parties performed whether or not CAT signed the form.[12]

At issue in this case are fifteen AEF sales orders issued to CAT, all of which

---

7 AEF Facts ¶ 6; CAT Facts ¶ 6.

8 AEF Facts ¶6.

9 *Id.* at ¶ 8.

10 *Id.* at ¶¶ 8-10; CAT Facts ¶ 10.

11 *See, e.g.*, Sobeck Dep. at 122; Katz Dep. at 11; Lyda Decl. Ex. 5 (AEF sales order, dated April 30, 2004, "confirms agreed order with Mr. Lyda"); Lyda Decl. Ex. 16 (AHCOM sales order, dated November 12, 2003, confirming order); Lyda Dep. at 210-11 (describing that CAT has entered into verbal contracts as a buyer and as a seller).

12 AEF Facts ¶ 10. CAT does not dispute that the parties performed on unsigned sales orders, but it points out that for "purchases by CAT of any major amount of goods . . . it was the custom of CAT . . . to sign the appropriate documents." CAT Facts ¶ 7. CAT does not claim that AEF was aware of this custom.

contained the standard arbitration clause. Seven of the forms (numbered 22595-22601) are dated February 10, 2005, and eight of the forms (numbered 22659-22666) February 23, 2005.[13] According to AEF, it issued these sales orders immediately after CAT placed orders with AEF.[14]

*February 10 Sales Orders*

On February 10, 2005, Lyda entered an oral agreement with Sobeck to buy cashews from AEF.[15] Sobeck prepared sales order forms confirming the order and faxed them to Lyda on the same day.[16] Each form included an arbitration clause and indicated that it "[c]onfirm[ed] phone order from Tim Lyda to Gene Sobeck."[17] The fax cover sheet instructed CAT: "Please advise your purchase order numbers and return with signature immediately (all contracts will be null and void if not signed an returned)."[18] CAT did not respond to the fax, either to inform AEF that it had not placed an order or to sign the sales orders.[19]

CAT argues that the February 10 sales orders did not establish an agreement to

---

13 Sobeck Decl. Ex. I.

14 Sobeck Decl. ¶¶ 13-14; 20-23.

15 AEF Facts ¶ 11.

16 *Id.* at ¶ 13; CAT Facts ¶12.

17 *See* Sobeck Decl. Ex. C.

18 CAT Facts ¶ 13.

19 AEF Facts ¶ 16; CAT Facts ¶ 16.

arbitrate because CAT never signed the documents. CAT, however, does not dispute that the parties reached an oral agreement on February 10.[20] Indeed, the language of the February 10 sales orders indicates that there was an oral agreement, and CAT never objected to the purported confirmation. Moreover, the parties behaved as if they had reached an oral agreement before CAT filed suit in this case.

Mr. Lyda's deposition testimony, to the extent it attempts to deny that the sales orders confirmed an oral agreement, is not credible. Lyda refers to the sales order forms as "proposals" and asserts that "I sign documents when I confirm [a phone order],"[21] but there is no evidence that AEF had any reason to think that there was no oral agreement or that the oral agreement was not binding until CAT confirmed by signing the sales orders.[22] On these issues, Lyda's testimony asserts legal conclusions,[23] but does not establish the facts necessary to support the conclusions.

---

20 AEF's Rule 56.1 statement asserts that Lyda and Sobeck reached an oral agreement. AEF Facts ¶ 11. CAT's response does not dispute the assertion. CAT's Statement of Material Facts in Dispute ("CAT Opp'n Facts") ¶ 11-14. CAT's failure to dispute AEF's well supported factual assertion results in CAT's statement being deemed admitted. *E.g.*, *Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F.Supp.2d 315, 317-19 (S.D.N.Y. 2003), *aff'd*, 88 Fed.Appx. 468 (2d. Cir.), *cert. denied*, 543 U.S. 813 (2004).

21 Lyda Dep. at 104-11; 147-49.

22 *See, e.g*, Lyda Dep. at 147-48 (asked whether Sobeck was under the impression that Lyda had placed an order, Lyda responded: "he might have felt that way"; asked whether the sales orders confirmed a phone order, Lyda responded: "[Sobeck] might have thought it confirmed it, but I never confirmed it.").

23 After refusing to answer questions about whether Lyda ever told Sobeck that the sales orders were not confirmed, Lyda asserted: "This is Contracts 101 . . . . If it is not signed, it's not a contract." Lyda Dep. at 150.

*February 23 Sales Orders*

On February 22, 2005, Ms. Roy, a broker for CAT, contacted Mr. Katz, a broker for AEF, and made a firm bid to buy cashews from AEF. AEF accepted.[24]

In transactions arranged by buyer's and seller's brokers, such as this transaction, it is customary in the industry for each broker to send a confirmation to his own client and to the other broker.[25] In addition to the exchange of the brokers' confirmation forms, a seller may send a confirmation directly to the buyer.[26]

After the February 22 order, Katz sent confirmation forms to AEF and Roy, and Roy sent confirmation forms to CAT and Katz.[27] On February 23, 2005, AEF issued sales order forms to confirm the order and faxed them to CAT on March 2, 2005. The fax cover sheet asked Lyda to sign and return the sales orders.[28]

As with the February 10 sales orders, CAT argues that the February 23 sales orders did not establish an agreement to arbitrate because CAT did not sign the documents. But CAT does not dispute that Roy and Katz, acting as brokers for CAT and AEF, reached an oral agreement that

---

24 AEF Facts ¶ 17; Sobeck Decl. Ex. E (letter from Ms. Roy describing firm bid and confirmation); Roy Dep. at 64-68 (describing firm bid and confirmation).

25 *Id.* at 48-49; Katz Dep. at 11, 18-20.

26 *Id.* at 20:6-18.

27 Katz's confirmation form contained an arbitration provision, but Roy's confirmation form did not. Lyda Decl. Exs. 9 & 11.

28 Lyda Decl. Ex. 14.

was confirmed by Roy and AEF.[29] Rather, CAT asserts that "[i]n light of CAT's custom and practice as to its major orders, this 'Sales Confirmation' was a mere proposal."[30] Notwithstanding this assertion, the Court finds, based on (1) the deposition testimony of Roy[31] and Katz,[32] (2) the course of dealing between these parties, (3) the common practice of the nut industry, and (4) the parties' actions prior to litigation, that the parties reached an oral agreement on February 22.

*Events After the Sales Orders*

The sales orders provided for deliveries to begin in March 2005. From March to May, AEF asked CAT to sign and return the sales orders,[33] and from April or May through October, AEF contacted CAT to establish a shipping schedule.[34] In response to these inquiries, CAT did not inform AEF that the sales orders were not binding. In fact, it indicated that it was considering selling

---

29 AEF Facts ¶ 17. CAT implies, but does not assert, that Ms. Roy was not authorized to make a firm bid, and it does not deny that Ms. Roy made a firm bid. CAT Opp'n Facts ¶17.

30 CAT's Facts ¶ 27.

31 Sobeck Decl. Ex. E (letter from Ms. Roy describing firm bid and confirmation); Roy Dep. at 64-68 (describing firm bid and confirmation).

32 Katz Dep. at 11.

33 *See, e.g.*, Lyda Dep. at 14; Sobeck Decl. Ex. E at 2.

34 *See, e.g.*, Sobeck Decl. Ex. E, H & J.

or washing the contracts.[35] At some point, however, CAT stopped responding.[36]

AEF submitted a demand for arbitration before the Association of Food Industries ("AFI") on August 30, 2005, and sent a copy of the demand to CAT on October 12.[37] On December 16, AFI sent a notice scheduling the arbitration for January 31, 2006.[38] In a January 17 e-mail to AFI, Mr. Lyda asked to move the date, identified his counsel for the arbitration, and noted that CAT had had favorable results in arbitrations before AFI.[39] AFI rescheduled the arbitration for March 7, 2006.[40]

On March 6, 2006, CAT sought to enjoin the arbitration, claiming that there were no agreements to arbitrate.[41] This was CAT's first objection to arbitration, and it came almost five months after receiving the initial demand for arbitration. In an affirmation submitted in support of CAT's petition for an injunction, CAT's attorney explained the delay:

> "In preparation for the impending AFI arbitration hearing, [CAT] thought it prudent to consult with us relative to the position CAT could take in such a hearing. . . . [W]e advised CAT that based on CAT's records and our understanding of the law, there was a very significant issue in this matter, regarding formation of any contract and in addition, of any

---

35 Martens Dep. at 112; Roy Dep. at 112; Sobeck Decl. Ex. H at 2.

36 Sobeck Decl. Ex. H, J & K.

37 Lyda Decl. Ex. 13.

38 Sobeck Decl. Ex. L.

39 Sobeck Decl. Ex. M.

40 Sobeck Decl. Ex. R.

41 Carmen Decl. Ex. 25.

agreement to arbitrate by CAT."[42]

The Court concludes, based on this explanation and CAT's behavior prior to filing a petition to enjoin arbitration, that CAT believed until March 6, 2006 that it was obliged to arbitrate.

*Discussion*

AEF asks the court to confirm its arbitration award against CAT. CAT opposes confirmation on the grounds that it did not agree to arbitrate the claims and thus is not bound by the award.

The threshold question of whether there was an agreement to arbitrate is for the Court.[43] AEF's arguments that CAT is time-barred from raising this issue and that this question

---

42 Kleiman Affirmation ¶¶ 6-7.

43 *See, e.g.*, *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys, Inc.*, 357 F.3d 266, 267-68 (2d Cir. 2004); *Stolt-Nielsen Trans. Group v. Edible Oil Trading Corp.*, No. 06 Civ. 0703 (NRB), 2007 WL 194182, at *2 (S.D.N.Y. Jan. 24, 2007); *Local 205, Cmty. & Soc. Agency Employees' Union, Dist. Council 1707 AFSCME, AFL-CIO v. Day Care Council of New York, Inc.*, 992 F.Supp. 388 (S.D.N.Y 1998).

The time bar of section 12 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 12, does not prevent a party opposing confirmation from arguing that it has not agreed to arbitrate. *Stolt-Nielsen Trans. Group*, 2007 WL 194182, at *3 n.7 (citing *Local 205*, 992 F.Supp. at 391-92)).

Under *Prima Paint*, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-56 (2006) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). "But '[t]he issue of the contract's validity is different from the issue of whether any agreement between the [parties] was ever concluded.' . . . [A]s suggested by this distinction . . . , the *Prima Paint* rule does not apply to claims that a contract that includes an arbitration agreement does not, as a whole, exist." *Bar-Ayal v. Time Warner Cable Inc.*, No. 03 Civ. 9905 (KMW), 2007 WL 2990032, at *6 (S.D.N.Y. Oct. 16, 2006) (citing *Buckeye*, 546 U.S. at 444 n.1).

must be determined by the arbitrators are not persuasive.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[44] Whether a valid agreement to arbitrate exists is determined by state law principles governing the formation of contracts.[45] But, "[t]o the extent that state law 'treats arbitration agreements differently from any other contracts,' [] it is preempted by § 2 of the FAA, and will not apply to an agreement governed by the federal statute."[46]

AEF claims that CAT agreed to and is bound by the arbitration provisions contained in the sales orders.[47] According to AEF, the sales orders (1) confirmed oral agreements between the parties, (2) were consistent with prior transactions between AEF and CAT, and (3) were not objected to by CAT. AEF argues also that CAT's actions, prior to seeking an injunction, indicate that CAT understood the arbitration agreements to be binding. CAT claims, however, that there are no agreements to arbitrate because it never signed AEF's sales orders.

Section 2-207 of the New York Uniform Commercial Code ("UCC") governs

---

44 *AT&T Tech., Inc. v. Comm'n Workers of Am.*, 475 U.S. 643, 648 (1986).

45 *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

46 *Deer Stags, Inc. v. Garrison Indus., Inc.*, No. 00 Civ. 0267 (DC), 2000 WL 1800491, at *4 (S.D.N.Y. Dec. 7, 2000) (quoting *Chelsea Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295 (2d Cir. 1999)).

47 Sobeck Decl. Exs. C & G.

disputes involving the additional terms in written confirmations.[48] It provides that, as between merchants, additional terms included in a written confirmation become part of the contract unless (1) the offer expressly limits the acceptance to the terms of the offer, (2) they materially alter it, or (3) notification of objection to them is given within a reasonable time.[49] In this case, the parties are merchants who reached oral agreements that were confirmed by AEF's sales orders dated February 10 and 23. Thus, additional terms contained in the sales orders were incorporated unless they materially altered the oral agreements.

Whether the inclusion of an arbitration clause materially alters the oral agreement must be determined on a case-by-case basis with "the burden of proving the materiality . . . on the party that opposes inclusion."[50] "A material alteration is one that would 'result in surprise or hardship if incorporated without express awareness by the other party.'"[51] To show a material alteration, the non-assenting party "must establish that, under the circumstances, it cannot be

48 An official comment to section 2-207 makes clear that it applies to additional terms contained in written confirmations: "Under this Article a proposed deal which in commercial understanding has in fact been closed is recognized as a contract. Therefore, any additional matter contained . . . in a later confirmation . . . must be regarded as a proposal for an added term." N.Y. U.C.C. § 2-207 cmt 2.

49 See N.Y. U.C.C. § 2-207; *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 98 (2d Cir. 2002).

50 *Aceros*, 282 F.3d at 100 (citing *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 223 (2d Cir. 2000)).

51 *Aceros*, 282 F.3d at 100 (quoting N.Y. U.C.C. § 2-207 cmt. 4); *see also Bayway Ref. Co.*, 215 F.3d at 224.

presumed that a reasonable merchant would have consented to the additional term."[52] Evidence of industry custom and the parties' course of dealings often are relevant to determining whether an additional term is material.[53]

In this case, there is no evidence that incorporation of the arbitration clauses without CAT's express assent would result in surprise or hardship. CAT does not deny that it was familiar with the arbitration language contained in AEF's standard sales order or that it received the sales orders at issue here.[54] Nor does it claim to have objected to the arbitration clauses in these or prior transactions. CAT's actions, prior to the filing of this suit, were consistent with an expectation that it had agreed to arbitration.[55] And arbitration clauses are common, if not customary, in the nut industry.[56] I, therefore, find that the parties agreed to arbitrate any disputes arising out of the

---

52 *Aceros*, 282 F.3d at 100.

53 *See, e.g.*, *Id.* at 101-02 (arbitration clause not material because arbitration provisions were common in the industry); *Chelsea Square Textiles Inc. v. Bombay Dyeing & Mfg. Co., Ltd.*, 189 F.3d 289, 296 (2d Cir. 1999) ("[E]vidence of trade usage and course of dealings between parties supported . . . finding of an agreement to arbitrate."); *Deer Stags, Inc. v. Garrison Indus., Inc.*, No. 00 Civ. 0267 (DC), 2000 WL 1800491 (S.D.N.Y Dec. 7, 2000) (arbitration clause not material because parties had engaged in numerous transactions).

54 Lyda Dep. at 122-23.

55 See text accompanying notes 41-42. "The parties' practical interpretation of their contract prior to litigation provides 'compelling evidence of the parties' intent,' including their intent with respect to arbitration." *Local 205, Cmty. & Soc. Agency Employees' Union, Dist. Council 1707 AFSCME, AFL-CIO v. Day Care Council of New York, Inc.*, 992 F.Supp. 388, 392 (S.D.N.Y 1998) (quoting *Gestetner Holdings, PLC v. Nashua Corp.*, 784 F.Supp. 78, 83 (S.D.N.Y. 1992); *Ocean Transport Line, Inc. v. Am. Phil. Fiber Indus., Inc.*, 743 F.2d 85, 91 (2d Cir.1984)).

56 In fact, prior to the oral agreements at issue here, CAT had initiated arbitration against a nut seller under an identical arbitration clause contained in the seller's sales contract. *See* Sobeck Decl. Ex. N.

February 10 and 23 sales orders. This conclusion is consistent with those reached by other courts faced with merchants who received, without objection, unsigned confirmation forms containing arbitration agreements that were consistent with prior courses of dealing.[57]

In arguing that there is no arbitration agreement in this case, CAT focuses entirely on what it calls AEF's "own requirements" that the sales orders be signed and returned.[58] CAT argues that because AEF requires sales orders to be signed, the unsigned forms do not establish an agreement to arbitrate. To support its claim that AEF's sales orders are not binding until signed and returned, CAT points to (1) AEF's statement, subsequent to the February 10 oral agreement, that "contracts will be null and void if not signed and returned,"[59] (2) AEF's requests for CAT's signature, and (3) prior sales orders that were signed.

The facts cited by CAT do not prevent the Court from finding that the parties intended to be bound to the oral agreements memorialized in the February 10 and 23 sales orders. It is clear

---

57 *See, e.g.*, *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir.1995) (appropriate to find agreement to arbitrate because arbitration was widespread in industry and party "had received some 100 forms incorporating the arbitration clause during the years of dealing between the parties"); *Pervel Indus., Inc. v. T M Wallcovering, Inc.*, 871 F.2d 7, 8 (2d Cir. 1989) ("[Given] well established custom of sending purchase order confirmations containing an arbitration clause, a buyer who has made numerous purchases over a period of time, receiving in each instance a standard confirmation form which it either signed and returned or retained without objection, is bound by the arbitration provision."); *Huntington Int'l. Corp. v. Armstrong World Indus. Inc.*, 981 F. Supp. 134, 138-39 (E.D.N.Y. 1997) ("[Buyer] is bound by the arbitration clause contained in [seller's] . . . confirmations because [buyer], over a long course of dealing, received those confirmations and retained them without objection.").

58 *See, e.g.*, CAT Reply Mem. [DI 30], at 30. CAT's memorandum in support of its motion and in opposition to AEF's motion for summary judgment does not cite facts or law to support its argument that there was no agreement to arbitrate. *See, e.g.*, CAT Mem. [DI 29].

59 This statement was included in the cover sheet to the February 10 fax that attached copies of the February 10 sales orders. *See* Lyda Decl. Ex. 3.

that an agreement to arbitrate may be binding even though it is not signed,[60] but a signature would be necessary if the parties did not intend to be bound by the oral agreement.[61] The facts emphasized by CAT are some evidence of the parties' intent, but they are not ultimately persuasive.

*Conclusion*

For the foregoing reasons, AEF's cross-petition to confirm the arbitration award is granted and the Clerk shall enter judgment for AEF and against CAT in the sum of $128,500 together with interest and costs. CAT's petition to stay arbitration is denied in all respects. The Clerk shall close the case.

SO ORDERED.

Dated: November 30, 2007

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

60 *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519 (2d Cir. 1980); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987).

61 *Washington Heights-West Harlem-Inwood Mental Health Council, Inc. v. Dist. 1199, Nat. Union of Hosp. & Health Care Employees, RWDSU, AFL-CIO*, 748 F.2d 105, 107 (2d Cir. 1984) (citing V'Soske v. Barwick, 404 F.2d 495, 499 (2d Cir. 1968)) ("[I]f the parties intend not to be bound until they have executed a formal document embodying their agreement, they will not be bound until then; [but]. . . the mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event."); *Schenck v. Francis*, 26 N.Y.2d 466 (1970) (if parties do not intend to be bound until there is a signed writing, no contract exists until that time).